[Sac. No. 1991. In Bank.—April 7, 1914.]

## L. E. CROSS, Respondent, v. H. B. MAYO, Appellant

APPEAL—RECORD—NOTICE OF INTENTION TO MOVE FOR NEW TRIAL.—It is not necessary that the notice of intention to move for a new trial should be included in the record on appeal.

ID.—DENIAL OF NEW TRIAL—RECORD—PRESUMPTION ON APPEAL AS TO ASSIGNMENT OF ERROR AND NOTICE OF INTENTION.—While on an appeal from an order denying a new trial it is necessary that it should in some way be made to appear in the record what the grounds of the motion for a new trial were, still where there was a statement on motion for the new trial or a bill of exceptions, containing specifications of insufficiency of evidence and assignments of errors of law, the presumption is, that notice was duly given, and that the specifications and assignments in the statement or bill of exceptions conform to those in the notice and constitute the grounds upon which the court was asked to grant a new trial.

VENDOR AND VENDEE—MISREPRESENTATION AS TO QUANTITY OF LAND—WAIVER OF RIGHT TO RESCIND BY DELAY.—In an action by a vendor of swamp land to require the vendee in default in his payments to pay the moneys due under the contract of purchase or be foreclosed of all his rights thereunder, the right of the vendee to plead a rescission · of the contract because of misrepresentations by the vendor as to the quantity of the land is waived, if no attempt is made to rescind until two months after the commencement of the action and more than a year after the vendee has knowledge of the truth or falsity of the representations, and he has retained possession and control of the property in the mean time.

ID.—RESCISSION OF CONTRACT—NECESSITY OF PROMPTNESS.—A prompt disaffirmance of a contract by one entitled to rescind, upon discovery · of the facts entitling him to rescission, is essential. If he fails to act promptly, and continues to treat the contract as binding, he will be held to have waived his right to rescind and to have elected to affirm the contract.

ID.—PROMPTNESS IN RESCISSION—QUESTION FOR TRIAL COURT.—Whether a person entitled to rescind has acted promptly is a question to be decided by the trial court upon the facts of the particular case. The evidence in this case is of such a nature as to support a conclusion that the vendee, with full knowledge of the facts, was not ready to end the contract, and that, continuing to treat the same for his own purpose as valid and binding, he failed to make known any desire to terminate the contract for such a length of time and under such circumstances as to preclude the exercise by him of any right of rescission.

ID.—FORECLOSURE OF CONTRACT TO PURCHASE—JUDGMENT ALLOWING VENDEE TIME TO PAY.—A provision in the judgment, in this action by a vendor to require his vendee to pay the moneys due under the contract of purchase or be foreclosed of all rights thereunder, fixing a time within which the vendee should pay the amounts due or be foreclosed of his rights, was in consonance with equity, and ten days were, under all the circumstances, not an unjustly short limit of time.

ID.—EXTENSION OF TIME—REFUSAL OF COURT TO GRANT.—And the trial court was not guilty of any abuse of discretion in subsequently refusing to grant an extension of time, even if it is assumed that it had the power thus to change the provision as to time contained in the judgment.

ID.—PAYMENTS MADE BY VENDEE—RIGHT TO THEIR RETURN.—There having been no rescission or abandonment of the contract by consent, and the vendor having insisted on standing upon the terms of the agreement, the vendee was not entitled to a return of the payments already made by him.

ID.—JUDGMENT FOR VENDOR—EXTENT OF RELIEF.—The vendor was not entitled to a judgment against the vendee both for a forfeiture and for the amounts the vendee is in default under his contract.

APPEAL from a judgment of the Superior Court of Solano County and from an order refusing a new trial. A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

Walter H. Robinson, Horace W. Philbrook, and Frank R. Devlin, for Appellant.

L. G. Harrier, T. T. C. Gregory, and Theodore W. Chester, for Respondent.

THE COURT.—After further consideration the court adopts the opinion written by Mr. Justice Angellotti when the case was decided in Department. That opinion is as follows:

We have in this case an appeal from what is declared by defendant to be the final judgment in an action brought by plaintiff to obtain a decree declaring and adjudging that defendant had failed to perform his part of a contract for the purchase by him from plaintiff of certain real property of plaintiff, fixing a time within which he should so comply, and decreeing that if he did not so comply within said time

he should be forever foreclosed of all right or interest in the property or to a conveyance thereof. We have also an appeal from an order denying defendant's motion for a new trial. The written decision of the trial judge, findings of fact, and conclusions of law were signed by the trial judge on April 8, 1911, and filed April 10, 1911. These findings of fact fully disposed of all the issues made by the pleadings. By the conclusions of law it was declared that defendant has failed to perform his part of the contract; that plaintiff is entitled to a decree adjudging defendant to be in default in the sum of one thousand dollars for interest unpaid, $8,160.00 for cattle sold without the permission or consent of plaintiff and unaccounted for, and $2,923.68 for taxes unpaid, in all $12,083.68; that plaintiff is entitled to a decree directing defendant to pay to him said sum of $12,083.68 with interest from certain specified dates, within ten days from the signing, serving and filing "of this decree and the judgment herein," or that failing so to pay said sums, he shall be immediately foreclosed of all his rights under the contract, and plaintiff shall upon such failure be entitled to the possession of the land described in the contract and to receive back from the Stockton Savings Bank the deed placed in escrow therein; that defendant is not entitled to a rescission of said contract, nor a reconveyance from plaintiff of all or any of the real estate conveyed to him by virtue of the agreement, nor the return of any money paid plaintiff by defendant or expended by him on the property, nor any sum of money, or property or thing, nor to any reformation of the contract; that defendant is entitled to nothing under his cross-complaint and that plaintiff is entitled to recover his costs.

A judgment in exact accord with these conclusions of law was signed on April 8, 1911, and filed on April 10, 1911. It cannot be questioned that it fully determined all the asserted rights of both parties. There was absolutely nothing therein to indicate that it was interlocutory in nature or that some further judgment was contemplated.

On April 21, 1911, what is styled in the transcript a "final judgment" was signed and entered. It recited that the findings of fact and conclusions of law and the judgment and decree had been made and entered therein on the eighth day of April, 1911, and that the same were duly served on the attor-

neys for the defendant and on the defendant on the tenth day of April, 1911; that both parties appeared by their attorneys; that evidence was introduced, and that it appeared that neither the whole nor any part of the principal sum of $12,083.68 mentioned in said complaint and findings of fact, conclusions of law, and judgment, nor any part of the interest thereon, had been paid. It then ordered, adjudged, and decreed that the defendant be foreclosed of all of his right, title, and interest in the contract mentioned in said judgment and decree, and further that plaintiff have judgment for said sum of $12,083.68 and interest. It then repeated the adjudications contained in the former judgment.

The only notice of appeal from any judgment is one served and filed June 20, 1911, by which notice was given that defendant appeals ''from the judgment therein given, made and entered in the said superior court on the 21st day of April, 1911, in favor of the plaintiff in said action, and against said defendant and from the whole of said judgment.'' The undertaking on appeal refers to the judgment appealed from as one ''made and entered . . . the 21st day of April, 1911, foreclosing contract and for the sum of'' $12,083.68.

Upon these facts it is claimed that the final judgment was the judgment of April 8, 1911, that the so-called judgment of April 21, 1911, was simply an order made after final judgment, and that while such order was appealable as an order made after judgment, an appeal therefrom cannot be considered as an appeal from the judgment in the action; the result being that the judgment and the proceedings on which the judgment depends cannot be reviewed on such appeal. It is further claimed that the notice of appeal by its express terms limits the appeal to the judgment or order of April 21st, with the result that there is no appeal from the judgment of April 8th. As to the latter claim we are satisfied that the language of the notice is such as to absolutely preclude any other conclusion. We have simply an appeal from the judgment or order of April 21st, and if that is not the judgment in the action, but simply an order made after judgment, we have no appeal from the judgment. There is some force in the claim of plaintiff that the judgment of April 8th, finally determined the rights of the parties in relation to all the matters in controversy, and is, in fact, the final judgment

in the action. We deem it unnecessary, however, to determine this question, as it seems clear to us that the record is such that all of defendant's contentions of any importance are of such a nature that they may be considered on his appeal from the order denying his motion for a new trial.

There is no force in the claim that they may not be so considered. That there was a motion for a new trial on the part of defendant entertained and determined by the trial court is established by its order of December 21, 1911, denying such a motion. The suggestion that the notice of motion was prematurely given if the judgment of April 8, 1911, was not the final judgment is without force, even if we assume purely for the purposes of this decision that the notice may not properly be given prior to entry of judgment, in view of the fact that it does not appear *when* such notice was given. As is suggested by plaintiff, the notice of motion contained in the transcript cannot be considered, being no part of the judgment-roll, and not being contained in any bill of exceptions or statement, and there is no other evidence as to the time when the notice was given, except such as is afforded by the presumption, in the absence of a showing to the contrary, that notice was duly given. It is not necessary that the notice of intention to move for a new trial should be included in the record on appeal. While on an appeal from an order denying a new trial it is necessary that it should in some way be made to appear in the record what the grounds of the motion for a new trial were (*Williams* v. *Hawley,* 144 Cal. 100, [77 Pac. 762]), it has several times been substantially held that where there is a statement on motion for a new trial or a bill of exceptions, containing specifications of insufficiency of evidence and assignments of errors of law, the presumption is, in the absence of a showing to the contrary, that notice was duly given, and that the specifications and assignments in the statement or bill of exceptions conform to those in the notice and constitute the grounds upon which the court was asked to grant a new trial. (See *Schneider* v. *Market St. Ry. Co.,* 134 Cal. 482, [66 Pac. 734]; *Pico* v. *Cohn,* 78 Cal. 384, [20 Pac. 706]; *Southern Pac. R. R. Co.* v. *Superior Court,* 105 Cal. 84, [38 Pac. 627].) In the first of the cases cited, *Leonard* v. *Shaw,* 114 Cal. 71, [45 Pac. 1012], and *Sprigg* v. *Barber,* 122 Cal. 574, [55 Pac. 419], which are relied upon

by plaintiff, were shown to be cases where there was no state-
ment or bill of exceptions, and they were distinguished on
that ground. We see no reason for the suggestion that the
bill of exceptions was signed by the trial judge ''without any
legal sanction.'' That the bill of exceptions was in fact on
file is established by the stipulation of the attorneys for plain-
tiff attached to the transcript.

The contract between the parties was one for the purchase
and sale of a large tract of land, described therein as being
''all land in Swamp Land Survey No. 589, in Solano County,
and all land in Swamp Land Survey No. 115 in Napa County,
which lies south of the center line of South Slough, so-called;
the said lands containing about sixty-five hundred acres, more
or less.'' The contract was executed on March 3, 1909, the
day it bore date. Cross agreed that upon the payment of the
stipulated purchase price, with interest, within the time des-
ignated, he would transfer this property, free and clear of
liens and encumbrances, to Mayo, together with all the per-
sonal property thereon. The stipulated purchase price was
three hundred and fifty thousand dollars, of which fifty thou-
sand dollars was recited to be paid by the transfer by Mayo to
Cross of three hundred and twenty acres of land in Sutter
County and a lot in the city of Oakland, which transfer was
made as agreed upon. Mayo was to have until March 3, 1914,
within which to pay the remaining three hundred thousand
dollars, with interest thereon at the rate of four per cent
per annum from January 1, 1910, which was payable semi-
annually from said January 1, 1910. Mayo was to enter
into possession of all the property, real and personal, at once,
and to remain in possession during the life of the agreement.
Mayo agreed to pay on account of the interest for 1910,
two thousand dollars on or before June 15, 1909, and three
thousand dollars on or before December 15, 1909, He fur-
ther agreed to pay all state, county, or other taxes levied
or assessed upon said lands during the life of the agreement.
It was further agreed that upon obtaining the written con-
sent of Cross, Mayo might sell any of the cattle on the land,
or the increase thereof, but that the entire proceeds of
any such sale or sales shall be paid to Cross immediately
upon the same being made, and the amount thereof applied
upon the unpaid purchase price. Mayo was to **farm** the

lands for his own benefit, and he agreed to keep the levees and other reclamation works thereon in a state of efficiency, and repair any breaks therein. Cross was to place a deed of the property in escrow with the Stockton Savings Bank, to be delivered upon the payment by Mayo of the full purchase price. It was agreed that if Mayo failed to perform the terms of the agreement on his part, or failed to make the payments therein provided to be made, Cross might end and determine the agreement. It was further provided that in the event of any such failure, "any and all payments made" to Cross by Mayo "shall be and belong" to Cross "as compensation for the use of said land" by Mayo, and that Mayo "shall have no claim, either at law or in equity" against Cross "or said lands" because of any of such payments, and that the fifty thousand dollars paid by the conveyance of said land in Sutter County and in the city of Oakland "shall be and belong" to Cross, and that Mayo "shall have no claim either at law or in equity thereto."

In his complaint in this action, filed August 11, 1910, plaintiff alleged the failure of defendant to perform his contract in three particulars viz.: failure to pay interest due July 1, 1910, amounting to one thousand dollars; failure to pay state and county taxes amounting to $2,923.68, which plaintiff had been obliged to pay to save his land from sale; and the sale without the consent of plaintiff of the cattle on said property, and the failure to account to plaintiff for the proceeds of such sales or any part thereof. The value of such cattle was alleged in the complaint to be $5,590.00, but this was changed by amendment on the trial to $8,160.00. It was further alleged that on August 2, 1910, plaintiff had made a written demand on defendant that he comply with these conditions of his contract within one week, but that defendant had failed to do so.

The failure to pay the one thousand dollars interest due July 1, 1910, was admitted. The trial court found that defendant had failed and neglected to perform his part of the contract in the particulars alleged in the complaint,—namely, nonpayment of such interest, nonpayment of taxes, and in the matter of the cattle. There is no attack by specification of insufficiency of evidence upon the finding in regard to the taxes, which declares, in accord with the allegations

of the complaint, that defendant failed to pay state and county taxes levied and assessed "upon the lands" and that plaintiff was compelled to pay the same, to the amount of $2,923.68, in order to save his lands from sale. This finding, in the absence of any such attack, must be taken here as conclusively establishing the facts stated therein. In so far as the cattle are concerned, it cannot be held that any of the findings are without sufficient support in the evidence. Admittedly defendant sold such cattle. It is undisputed that plaintiff never gave defendant any consent in writing to do so. Whether or not consent was orally given was a question upon which the evidence was conflicting, and the conclusion of the trial court is conclusive upon us. This is also true as to the question whether defendant accounted to or paid to plaintiff any part of the proceeds of said sales, and also as to the value of the cattle. The testimony of plaintiff furnishes sufficient legal support for the finding as to such value.

The real contention of the defendant is based on an alleged defect in the title of plaintiff to a quantity of land, claimed by defendant to be three hundred acres and by plaintiff to be only one hundred and ninety acres, the evidence appearing to us to be in accord with plaintiff's claim in this respect, immediately adjoining Swamp Land Survey No. 569 on the south. (Swamp Land Survey No. 115, the other land referred to in the contract, is in Napa County, and there is no dispute about the same.) None of this land was in fact included in Swamp Land Survey No. 569, but all of it was a part of Tide Land Survey No. 34, which, as surveyed, lay between Mare Island and said Swamp Land Survey No. 569. Tide Land Survey No. 34 contained 164.55 acres. Title to said survey 34 is claimed by one Sawyer, who is litigating the question of ownership thereof with the United States government, which claims the land as being a part of Mare Island. Plaintiff's levee intrudes upon said survey 34, and admittedly incloses with his Swamp Land Survey 659, one hundred acres of the original survey 34 and 90 acres of accretions. Plaintiff never claimed any title to any part of the survey 34. His levee was built upon a line agreed upon in the year 1896 by him and the United States authorities as being the line between his prop-

erty and that of the United States. The claim of defendant is that at the time of the execution of the agreement plaintiff represented to him that all of the land embraced within his levee was within the lines of Swamp Land Survey 569, and, consequently, was covered by the agreement for sale. The acreage in fact included in survey 569 and covered by the agreement, apparently measured fully up to the acreage specified in the agreement, viz.: sixty five hundred acres. Defendant's complaint is simply that the agreement does not in fact include the particular land within the levee that is within the line of Tide Land Survey 34. Upon the theory that this condition is the result of false representations on the part of plaintiff, defendant, more than two months after the commencement of this action, attempted to rescind the contract, and by cross-complaint set up his alleged cause of action in that behalf. The findings were in favor of plaintiff upon all the issues made by the cross-complaint in this behalf and the answer thereto. It may well be questioned whether there is sufficient evidence to sustain some of these findings. It is doubtful, for instance, whether there is any real conflict on the proposition that plaintiff did represent that his levee was upon his own line, and included only land covered by the agreement. The map which, according to his own testimony, he gave to defendant at the time, would appear to be almost conclusive on this question. Apparently plaintiff believed the facts to be entirely in accord with such representations. There is also perhaps some inconsistency in some of the findings on this particular branch of the case, as is claimed by learned counsel for defendant. But these things do not impair the effect of a finding which reads as follows:

"Defendant has been in possession and control of said lands described in the cross-complaint since March 3, 1909, and has had every opportunity of ascertaining the truth or falsity of any statements or representations alleged to have been made by defendant previous to the execution of the said contract. Before January 1, 1910, defendant was in full knowledge of the whole truth or falsity of all the matters and facts alleged in his cross-complaint to have been misrepresented to him and has continued acting in pursuance of said contract, and has treated the property acquired

under it as his own and has derived all possible benefits from said transaction. Defendant has delayed any right of rescission that might exist to the material prejudice of plaintiff.''

We have carefully considered the evidence, and are satisfied that it must be held that it furnishes substantial support for this finding. It appears clear enough therefrom that very shortly after the execution of the agreement defendant knew fully as much about the facts in this regard as did plaintiff. There was evidence showing that as early as April, 1909, defendant, who was an attorney, commenced making investigations as to the litigation of Sawyer with the government, involving the land lying immediately north of Mare Island, obtaining from the United States district attorney's office copies of the papers in that litigation. There was ample evidence to sustain a conclusion that before January 1, 1910, he had full knowledge that Tide Land Survey 34, as surveyed by Mr. Eager, county surveyor of Solano County, for Mr. Sawyer, included lands lying within the Cross levee. According to the testimony of Cross, which must be here taken as true, it was not until the middle of July, 1910, that he ever said anything to Cross about it. In the mean time he had continued in possession under his contract, farming the property and using it for his own purposes and to his own profit, treating the contract in all respects as though it was a subsisting and binding engagement, without in any way intimating any desire to rescind the contract on account thereof. It was not until August 9, 1910, after he had been notified by Cross to at once pay certain amounts due under the contract, that he made any claim in regard thereto. His letter of that date did not indicate any desire to rescind the contract. He substantially made the claim that four hundred acres of the land called for by the contract were not owned by plaintiff, and stated that he was ready to comply with the contract in every respect, whenever it should appear that plaintiff was in a position to convey the same. As we have shown, none of the land actually described in the contract was included in Tide Land Survey 34. And, as already noted, it was not until October 18, 1910, more than two months after the commencement of this action, that he attempted to rescind the contract, giving notice of rescission on that day. It was

in this notice that the claim was for the first time made that plaintiff had been guilty of the alleged false representation that all the land included within his levee was embraced in the description contained in the contract. The question at all times was simply one as to the true location of the southerly line of Swamp Land Survey No. 569, in the vicinity of Mare Island. Manifestly plaintiff was entirely honest in his view that the line attempted to be fixed many years before by agreement between himself and the government officials at Mare Island, was to be taken as the true line. Assuming defendant to have substantially known all the material facts in regard to this matter, as we must assume in view of the finding, we do not see how the trial court's conclusion that he had by his delay waived his right to rescind may properly be held to have been erroneous. It is unnecessary to cite authorities in support of the well-settled proposition that a prompt disaffirmance of a contract by one entitled to rescind, upon discovery of the facts entitling him to rescind, is essential, and that if he fails to rescind promptly, and, to the contrary, continues to treat the contract as binding, he will be held to have waived his right to rescind and to have elected to affirm the contract. As it is stated in our Civil Code, "he must rescind promptly, upon discovering the facts which entitle him to rescind." (Sec. 1691.) As was said in *Evans* v. *Duke,* 140 Cal. 22, 26, [73 Pac. 732] : "It is of the essence of the right to rescission that prompt notice shall be given of the demand, and that the action shall be timely brought. Upon obtaining knowledge of the facts entitling him to rescind, plaintiff should commence the proceedings for relief as soon as reasonably possible. 'Acquiescence consisting of unnecessary delay after such knowledge will defeat the equitable relief.' (2 Pomeroy's Equity Jurisprudence, sec. 817.) 'He is not allowed to go on and derive all possible benefits from the transaction and then claim to be relieved from his own obligations by rescission or refusal to perform on his own part. If, after discovering the untruth of the representations, he conducts himself in reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of and relief from the misrepresentations.' (2 Pomeroy's Equity Jurisprudence, sec. 897.) It would

seem to be unnecessary to multiply citations upon this principle of law so fundamental and so well settled.'' Whether the party entitled to rescind has acted promptly is a question to be decided by the trial court upon the facts of the particular case. The evidence in this case was of such a nature as to support a conclusion that the defendant with full knowledge of the facts, was not ready to end the contract, and that, continuing to treat the same for his own purpose as valid and binding, he failed to make known any desire to terminate the contract for such a length of time and under such circumstances as to preclude the exercise by him of any right of rescission. (See, also, *Kornblum* v. *Arthurs* 154 Cal. 246; [97 Pac. 420] ; *Marten* v. *Burns W. Co.*, 99 Cal. 357; [33 Pac. 1107] ; *Bailey* v. *Fox*, 78 Cal. 396, [20 Pac. 868].)

The defendant also attempted in his cross-complaint to set up a cause of action for reformation of the contract, by amending the description thereof to expressly include so much of Tide Land Survey No. 34 as was within the Cross levee. He asked that in case a rescission could not be had, the agreement be so reformed. The trial court decided against him upon the issues made in this regard. The claim made by defendant in this regard is, of course, a matter in no way connected with his attempted recission, nor is it material in determining whether he has forfeited all rights under his contract. It is important only in the event that the agreement is to be still deemed a binding and subsisting contract. As we are satisfied that we cannot properly disturb the action of the trial court in adjudging a foreclosure of all of defendant's rights under the contract, it is unnecessary to consider the attacks made upon the conclusions of that court on this branch of the case. It would in no way avail defendant were we to conclude that such conclusions were erroneous.

The trial court followed the practice suggested in *Keller* v. *Lewis*, 53 Cal. 113, and followed in *Kornblum* v. *Arthurs*, 154 Cal. 246, [97 Pac. 420] and many other cases, of fixing a time within which defendant should pay the amounts due upon said contract, or be foreclosed of all his rights under the contract. As was said in the case last cited, ''this was in consonance with equity.'' We cannot say that the time

fixed, ten days, was, under all the circumstances, "an unjustly short limit of time." We are further satisfied that it cannot be held that the trial court was guilty of any abuse of discretion in subsequently refusing to grant an extension of time, even if we assume that it had the power thus to change the provision as to time contained in the judgment of April 8th.

While the point is not available on the appeal from the order denying a new trial, there is no force in defendant's claim that he is, in any event, entitled to a return of the payments already made by him under the contract. The authorities relied on by him state the rule in cases where there is a rescission, or abandonment by consent. There was no rescission or abandonment by consent in this case, defendant's claim for a rescission being denied by the judgment. Plaintiff has not attempted to rescind, but has always insisted on the contract and is standing on its terms. His right to retain the purchase price already paid, including the property deeded to him in part payment thereof, is fully sustained by many decisions in this state. (See *Glock* v. *Howard etc. Co.*, 123 Cal. 1, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713] ; *Odd Fellows' Savings Bank* v. *Brander*, 124 Cal. 255, [56 Pac. 1109] ; *Oursler* v. *Thacher*, 152 Cal. 739, [93 Pac. 1007].)

There is unquestionably a sufficient appeal from the judgment or order of April 21, 1911. Whether the latter be considered the judgment or a special order made after judgment, it is undoubtedly erroneous in decreeing the recovery by plaintiff from defendant of the sum of $12,083.68 and interest, in addition to decreeing a foreclosure of all his rights under the contract. If it be an order after judgment, this portion thereof is erroneous in that it finds no support in the judgment of April 8th, which simply required defendant to pay this amount within a specified time *or* be foreclosed of all rights under the contract. There is no provision therein for any money recovery, except costs, in the event of foreclosure of defendant's rights because of nonpayment of such money within the specified time. If it be considered as the judgment in the action, this portion is erroneous in that it is without support in the pleadings and findings. It is to be borne in mind that this action was not one for the recovery of any money, but simply one to require defendant to pay the moneys

due under the contract or be foreclosed of all rights under the contract. Manifestly defendant cannot properly be required to pay the amount for failure to pay which his rights under the contract are declared forfeited, or, to state it in different words, plaintiff cannot have both a forfeiture and enforcement of the contract at the same time. To sustain such a recovery here would be in effect to require defendant to partially perform his agreement of purchase, and at the same time foreclose all his rights under such agreement. No authority is cited by plaintiff to sustain any such claim.

In view of our conclusion upon the matters already discussed, certain other claims made in the briefs of learned counsel for defendant are immaterial and need not be considered.

The order denying a new trial is affirmed. The judgment or order of April 21, 1911, is modified by striking therefrom the following:

"It is further ordered, adjudged and decreed that plaintiff have judgment for $12,083.68 with interest thereon at the rate of seven per cent as follows: On the sum of $1,000.00 being a part thereof, from July 1, 1910; on the sum of $8,160.00, being a part thereof, from January 1, 1910, and on the sum of $2,923.68, being the balance thereof from April 8, 1910,'' and as so modified is affirmed.

Beatty, C. J., does not participate in the foregoing.