[Civ. No. 3581. Third Appellate District.—October 20, 1928.]

ROBERT BENSON SWITZLER et al., Respondents, v. ROBERT A. KLEIN & COMPANY (a Corporation), Appellant.

Henry Haves for Appellant.

Allen & Lyon for Respondents.

PLUMMER, J.—Action for rescission and recovery of partial payment. Plaintiffs had judgment and the defendant appeals.

On the twenty-seventh day of March, 1923, the plaintiffs and defendant entered into an agreement in writing by which the plaintiffs agreed to purchase and the defendant agreed to sell and convey a certain lot in the city of Fullerton, in the county of Orange, known as lot 40 in tract 460, said lot having, as specified in the contract, a frontage of forty-six feet on Roosevelt Avenue, the purchase price of the lot being fixed at the sum of $1,850, upon which the plaintiffs had made payments aggregating $785. The suit is founded upon the action of the defendant company in making a reservation ten feet in width in favor of the city of Fullerton along the entire south side of said lot 40, which left in the undis-

puted control and possession of the plaintiffs a lot only thirty-six feet in width facing Roosevelt Avenue. The contract or agreement of purchase referred to was entered into between the plaintiffs and the defendant prior to the recording of the map of the addition to the city of Fullerton. The complaint alleges, and the court so found, that after entering into the contract of sale and purchase, the defendant, without the knowledge or consent of the plaintiffs, or of either of them, caused the proposed plat of the addition to the city of Fullerton, in which said lot 40 is situate, to be so changed as to reserve to the city of Fullerton, for such uses and purposes as the city might desire, a strip of land along the entire south line of said lot 40, ten feet in width. The map or plat as it existed at the time the plaintiffs entered into the agreement of purchase referred to, and which was exhibited to the plaintiffs, did not show or have upon its face any markings indicating a reservation to the city of Fullerton. The map just referred to was filed as a tentative map on April 17, 1923. It appears that the authorities of the city of Fullerton refused to accept the same or permit record thereof until a reservation ten feet in width had been made in favor of the city of Fullerton, along the south side of lot 40, and certain other lots in line therewith, but not involved in this action. Thereupon, the defendant entered, or had entered upon said map a reservation in favor of the city of Fullerton, as just described, and said map was, on the eighth day of May, 1923, approved and recorded. Thereafter, and some time during the early part of 1924, the city of Fullerton entered upon said ten-foot reservation and proceeded to construct a sewer along the entire course of said reserved part of lot 40. This sewer apparently was finished on or about the fourth day of February, 1924.

The contract or agreement of purchase provided that upon the election of the defendant a deed might be executed for said lot, delivered to the plaintiffs, and the plaintiffs execute a mortgage or trust deed securing the unpaid portion of the purchase price of said lot. The record shows that during the month of July, 1924, a deed was executed conveying to the plaintiffs lot 40 in block number 460 of said tract, without specifically mentioning the number of feet frontage of said lot on Roosevelt Avenue. The agreement of purchase

called for a lot forty-six feet on said avenue, free and clear of encumbrances, save and except as to the conditions specified in the agreement, which conditions are not involved in this action. The deed referred to the map on record, but neither the agreement of purchase nor any of the indorsements thereof, nor anything in the deed called attention to the fact that the reservation made upon the official plat or map had been made thereon, nor is there anything in the agreement, nor does there appear anything in the record, to indicate that the plaintiffs were to receive a lot having less than forty-six feet frontage on Roosevelt Avenue, free and clear of all conditions and reservations, save and except as specified in the agreement of purchase. The reservation of ten feet along the south side of said lot 40 was made without the knowledge or consent of the plaintiffs, and was made after the plat or map had been exhibited to the plaintiffs, after the agreement of purchase had been entered into by them with the defendant, and after the reservation was made, no information thereof appears to have been conveyed by the defendant to the plaintiffs. The only contention that the plaintiffs had knowledge thereof is the argument put forth upon the theory that the filing of the plat or map with the reservation thereon made as stated, after the execution of the agreement of purchase and sale, amounted to constructive notice. The record shows that the plaintiff Robert B. Switzler visited the lot a number of times after entering into the agreement of purchase, and in his visits obtained knowledge that the city of Fullerton was constructing the sewer, as heretofore mentioned. His testimony is to the effect that he made discovery of the installation of the sewer in September, 1924. This date, however, is undoubtedly incorrect because the sewer was completed early in February, 1924. The testimony, however, is undisputed that early in September, 1924, the plaintiffs were informed by a man who was fumigating orange trees that they, the plaintiffs, had only one row of orange trees instead of two. This was early in September, 1924. Thereupon the plaintiffs consulted an attorney by the name of C. R. Allen, who made an investigation of the records, and it was then that the plaintiffs became aware of the entry of the reservation in favor of the city of Fullerton, as hereinbefore stated. This was some weeks after the execution

of the deed of conveyance from the defendant to the plaintiffs, and the execution and delivery by the plaintiffs to the defendant of a trust deed to secure the remainder of the unpaid purchase price of said lot. Immediately upon making the discovery that the deed describing the lot did not convey to them, free and clear, the forty-six foot frontage on Roosevelt Avenue, as specified in the contract or agreement of purchase, the plaintiffs retained C. R. Allen as their attorney for the purpose of securing a settlement with the defendant. Negotiations were carried on between Mr. Allen, as attorney for the plaintiffs, and Mr. Robert A. Klein, representing the defendant, for some period of time, but not being able to reach an agreement, and the defendant apparently refusing to do anything, the plaintiffs, on or about May 6, 1925, executed and delivered to the defendant a deed to the lot in question and demanded a refund of all the payments theretofore made by the plaintiffs to the defendant. The deed was accepted and retained, but the defendant refused to refund the payments. Hence this action.

The court found that the agreement called for forty-six feet frontage on Roosevelt Avenue; that the reservation was made without the knowledge or consent of the plaintiffs, and was made in fraud of the right of the plaintiffs; that at the time of the execution and delivery of the deed by the defendant to the plaintiffs of the lot in question, on or about the third day of July, 1924, the plaintiffs had no knowledge of the reservation made in favor of the city of Fullerton, and relied upon the statements of the defendant and the contract of purchase hereinbefore referred to that they were receiving, under the deed, a lot having forty-six feet frontage on Roosevelt Avenue, unburdened by any reservations, or, rather, that the plaintiffs were receiving a conveyance to the lot according to the contract of purchase. That the failure to convey a lot containing forty-six feet frontage on Roosevelt Avenue, according to the agreement of purchase, constituted a failure of consideration, and, further, that the defendant was guilty of fraud in changing the plat or map covering said lot, without the knowledge or consent of the plaintiffs. The court found further that the plaintiffs had not waived their right to rescind the contract, and had done nothing which constituted a waiver of their rights to

rescind, and had not, by their acts, done anything which could be considered as a ramification of the change made, with respect to said lot, by the defendant. We have not followed the language of the findings, but have stated their substance and effect.

■ On the part of the appellant it is first contended that the reservation made by the defendant in relation to lot 40 gave to the city of Fullerton only an easement therein, and that the *res* itself was not conveyed to the city. This contention, however, is immaterial. The record shows that the city of Fullerton had taken possession of the reserved strip for the installation of a public sewer; that it had the right of ingress and egress on and over said reserved strip, and in addition to installing a public sewer, might use the same for a public alley. The exercise of such rights under the easement, if easement was created, took away from the plaintiffs all beneficial interest or ownership therein as a place of residence or as a tract of land upon which they could erect any building or structure. If it be admitted that there was conveyed to the plaintiffs a title to the strip of land in question, the circumstances show that the only beneficial interest they obtained therein would be in the way of light and air coming over the same. Under any circumstances, it is evident that a failure of consideration would immediately be worked in so far as the reserved strip of land is concerned, and for residential purposes a serious lessening of the value of the remaining portion of the lot. An inspection of the agreement of purchase referred to shows a tract of land subdivided into lots for residential purposes. The agreement of purchase contains a number of conditions and specifications limiting the location of the residences to be constructed, upon the lots and upon lot 40, the value of the structures to be erected, the distance from Roosevelt Avenue, etc.

Appellant calls our attention to a number of authorities where relief by way of cancellation has been denied, and insist that this case is governed thereby. These authorities and their application we will consider.

In 12 California Jurisprudence, 800, section 61, it is said: "Relief cannot be granted on the ground of fraud where it appears that the party seeking it, when the duty was incumbent upon him to investigate, has, through his own

negligence, failed to ascertain matters of public record. The rule in such cases is that one is presumed to know whatever he might, with reasonable diligence, have discovered, and when the facts upon which the alleged fraud rests are matters of public record, open to inspection, ignorance of the fraud will not excuse him. Where, however, there is no duty imposed to examine the records, and where, under the circumstances, a prudent person would not be put upon inquiry, the mere fact that such means of knowledge are open and not availed of does not bar relief when actual discovery is made. The circumstances must be such that the inquiry becomes a duty, and the failure to make it, a negligent omission.'' The same statement of the law is found in the case of *Tarke* v. *Bingham,* 123 Cal. 163 [55 Pac. 759]. In that case an action was brought to reform a mortgage, and as reformed, for foreclosure. An error was made in the recorder's office by which it appeared that the action on the promissory note involved was barred. The court held that nothing had occurred which would put the plaintiff upon notice, and that the plaintiff was not negligent in not making an examination of the record. ■ In the case at bar the plaintiffs were presented, for inspection, a proposed plat or map of the addition of the city of Fullerton, in which lot 40 was described as having a frontage of forty-six feet on Roosevelt Avenue. This lot was unburdened by any easements or conditions, save and except certain building restrictions specifically and particularly set forth in the agreement of purchase. Having had presented to them a map or plat showing forty-six feet frontage of said lot, having an agreement in their possession calling for a lot having forty-six feet frontage, free and clear, no duty was cast upon the plaintiff to investigate the record and ascertain whether the defendant had been guilty of making any change which would work a fraud upon their rights or limit either the extent or value of the property which they were to obtain as shown by the map and as covenanted in the agreement of purchase already executed, signed and delivered to them by the defendant.

■ It is further insisted by the appellant that the plaintiffs have waived any right to rescind by reason of not having begun this action immediately upon the discovery

of the fraud alleged. The record shows, however, that immediately upon knowledge being brought to the plaintiffs that they did not own the property to the extent set forth in their agreement, the plaintiffs employed an attorney to investigate the matter and to take up with the defendant the proposition of settlement or adjustment. The record fails to disclose just what attempts were made to avoid litigation, but it does show that the plaintiffs did not sleep upon their rights, but immediately began to take steps to secure some adjustment. The record shows that no considerable time elapsed while these negotiations were being carried on, and instead of being construed as a waiver of any rights to rescind, we think the effort to secure settlement without litigation should be looked upon favorably.

In the case of *Lady Washington Consolidated Co.* v. *Wood*, 113 Cal. 482 [45 Pac. 809], relied upon by the appellant as supporting the theory of waiver, the opinion shows that the minutes of the plaintiff corporation disclosed everything relied upon as a basis for its action. All the acts relating to the execution of the release which it desired to have set aside, appeared upon the record books of the company. The defense was made that the action was barred by the statute of limitations. The court there said that: "It is not sufficient for the plaintiff to allege that he was ignorant of the facts at the time of their occurrence and had not been informed of them within three years, etc.; that the plaintiff would be presumed to have knowledge of the facts which he ought to have known; that the plaintiff, in order to excuse himself, must show that the fraud or acts of fraud were committed under such circumstances that he would not be presumed to have knowledge of them; and further, if it appears that the plaintiff had notice or information of circumstances which would put him on inquiry, which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowedge of these facts." In that case, however, the books of the company contained facts sufficient to put a reasonable man upon inquiry, and differed from the case at bar in that the plat exhibited to the plaintiffs, and the agreement delivered to them were calculated to prevent inquiry, as they fully set forth just what the plaintiffs understood they were purchasing.

In *Hecht* v. *Slaney*, 72 Cal. 363 [14 Pac. 88], the validity of a recorded homestead was involved. There is no disputing the fact that a recorded homestead, under the codes, is constructive notice to all the world, and is readily distinguished from the facts surrounding the case at bar.

In the case of *Oppenheimer* v. *Clunie*, 142 Cal. 313 [75 Pac. 899], cited as authority that the action to rescind must be begun promptly, the record shows that instead of beginning the action promptly after the discovery of the alleged fraud (the fraud being in relation to a lease of a certain theater), the plaintiff waited until after the profitable season had gone by and did nothing until the arrival of what is called the dull season by theater operators. Under such circumstances the court held the plaintiff was not entitled to equitable relief.

In the case of *Harrington* v. *Paterson*, 124 Cal. 542 [57 Pac. 476], there was a long wait on the part of the defendant in complaining of the fraud relied upon, and, in fact, nothing was done by him until after suit to enforce the obligation had been begun.

In the case of *Ruhl* v. *Mott*, 120 Cal. 668 [53 Pac. 304], the record discloses that the plaintiff had knowledge of the alleged fraud for a long period of time, and had so dealt with the lands and premises involved as to waive his right to equitable relief.

In *Cross* v. *Mayo*, 167 Cal. 594 [140 Pac. 283], the court having before it the question of whether the circumstances showed action within a reasonable time, held as follows: "Whether the party entitled to rescind has acted promptly is a question to be decided by the trial court upon the facts of the particular case." And further stated that the evidence in that case was of such a nature as to support a conclusion that the defendant, with full knowledge of the facts, was not ready to end the contract, and that continuing to treat the same for his own purpose, as valid and binding, he failed to make known any desire to terminate the contract for such a length of time and under such circumstances as to preclude the exercise by him of the right of rescission. The trial court, in the instant case, had the right to determine, upon the facts presented, whether the plaintiff had brought his action for rescission within a reasonable time. We find nothing in the case

which indicates that after the discovery of the fraud the plaintiffs were willing to treat the conveyances made to them as valid and binding, or that indicates that the plaintiffs were willing to ratify the transaction as conveying to them the property for and as the property contracted for. The fact that they employed an attorney to represent them in the matter, who immediately opened negotiations with the defendant, shows an entirely contrary state of facts from those set forth in the case of *Cross* v. *Mayo, supra,* and also in the other cases relied upon by the appellant.

Again, citing 9 C. J. 1198, it is insisted that the plaintiffs, in making monthly payment upon the purchase price of the premises, after the discovery of the fraud and pending the period of attempted settlement, ratified the contract. While the payment of the purchase price has in many cases been held to indicate a ratification, it cannot be held that keeping up monthly payments for a short period of time during the pendency of negotiations seeking a settlement, is such a ratification as to bar rescission. Such payments, under the circumstances, constituted merely facts or acts to be considered by the trial court in determining whether the plaintiffs had or had not ratified the transaction, notwithstanding the alleged change in the map referred to, and which prevented them from receiving the property as contracted for. We do not find anything tenable in the contention by the appellant that the plaintiffs did not offer to place the defendant *in statu quo.* The record shows that what was done with regard to the trust deed was at the request of the defendant, and the plaintiffs, by their conveyance to the defendant, offered to restore to the defendant everything of value which they had obtained, and demanded a refund of the moneys paid to them on account of the purchase price of the premises and certain other items which do not appear to be objected to if the plaintiffs were held entitled to the property.

The judgment of the trial court is affirmed.

Hart, J., and Finch, P. J., concurred.