[Civ. No. 3724. Third Appellate District.—September 26, 1929.]

MAX ZLOZOWER, Respondent, v. SAM LINDENBAUM et al., Appellants.

Rosenthal & Rosenthal and Louis Babior for Appellants.

Henry O. Wackerbarth, Henry E. Carter and Joseph A. Adair for Respondent.

PLUMMER, J.—Plaintiff had judgment for the sum of $1500 in an action brought to recover that amount paid to the defendants as a part of the purchase price of certain lots in the city and county of Los Angeles. From this judgment the defendants appeal.

The court found that on or about the twenty-fourth day of October, 1924, the plaintiff and defendants entered into a certain agreement in the following words and figures, to wit:

"Los Angeles, Calif., Oct. 24, 1924.

"Received of Max Zlozower One thousand $1000.00 dollars as deposit on purchase of two double bungalows known as 1908–12 Judson St. Purchase price of which is $13,500.00 dollars. Thirteen thousand five hundred dollars. Half of the above is to be given to the seller on or about the 1st of Nov. and the balance to be paid no later than Nov. 20th 1924.

"SAM LINDENBAUM.
"DORA LINDENBAUM.
"MAX ZLOZOWER."

That at the time of entering into said agreement the court also found that the plaintiff paid to the defendants the sum of $1,000; that thereafter, and on or about the seventeenth day of November, 1924, the plaintiff paid to the defendants the further sum of $500. The court further found that on or about the twenty-seventh day of October, 1924, the plaintiff signed and handed to the Title Insurance and Trust Company written instructions regarding the sale referred to in the agreement heretofore set forth. The portions of said instructions necessary to be considered are as follows:

"October 27, 1924.

"I will hand you the sum of $12,500.00 and funds sufficient to cover my portion of charges, all of which you are authorized to use in connection with your order No. 784113 when you can issue, in your usual form, your new guarantee not to exceed $13,500.00 on:

"Lot 22 and the easterly 40 ft. of lots 16, 17 and 18 of Tract 5403 in the City and County of Los Angeles, as per

map recorded in Book 61 page 11 of Maps, etc. Conditions and restrictions as contained in the deed from Louis J. Wilde to Sam Lindenbaum and Dora Lindenbaum, with which I am familiar and hereby approve.

"MAX ZLOZOWER,
"2813 Boulder Street."

The escrow instructions are quite lengthy, but the portions which we have set forth are the only ones involved in this action and necessary to be considered. Thereafter, the defendants executed and tendered to the plaintiff a deed of conveyance to said property, which deed not only contained conditions and restrictions relative to the use of said property, limiting the occupation thereon by people of the white or Caucasian race, except employees, but also providing that any buildings to be used for family purposes, to be erected on said premises or any part thereof, should cost and be fairly worth not less than $2,000; that such buildings and the porches and approaches thereof should be located not less than fifteen feet from the front line of the property; that any buildings to be used for business purposes should cost and be fairly worth not less than $3,000; and that the exterior walls should be constructed of brick, tile, concrete, stucco, or other fire-resisting material; that outbuildings or garages permitted on said premises should be located not less than sixty feet from the front line of the property; and that all driveways should be placed on the right-hand side of said premises; that all conditions and restrictions herein contained should terminate on and after January 1, 1940. In addition to the conditions and restrictions just set forth relative to the uses to be made of said property and the buildings to be erected thereon, the deed tendered by the defendants to the plaintiff contained a reservation of an easement, to wit: Of a right of way five feet in width over the rear of said lots, for public utility purposes, with ingress and egress thereto. The deed tendered also expressed that the conveyance was subject to all taxes and assessments for the year 1923.

Upon this appeal the appellants urge three grounds for reversal: 1st. That an easement for electric light purposes granted to a municipality is not an encumbrance within the contemplation of the laws of the state of California; 2d. That appellants have fully performed their part of the

agreement by delivering or tendering to the plaintiff a good and sufficient deed of conveyance containing the provisions to which we have heretofore referred; and 3d. That the intention of the parties governs, and that the contract must be so construed as to carry out such intention. ▆ No reference is made anywhere in the briefs to the fact that taxes and assessments constitute an encumbrance upon property as provided by section 1114 of the Civil Code, and that there is nothing in the writings referred to or mentioned in the briefs of counsel indicating that there was any agreement on the part of the plaintiff to pay the taxes on the premises for the year 1923. This fact in itself shows that the deed tendered was not in accordance with the writings to which we have referred, and to which our attention has been invited.

The contention is also made that any easements upon the premises are covered by the words ''conditions and restrictions.'' In the consideration of this question it must be remembered that the conditions and restrictions contained in the tendered deed of conveyance, and which appear to have been contained in deeds of conveyance by which the defendants deraign title, specified and provided that the conditions and restrictions terminated on January 1, 1940, while the easement granted to the city covering a strip five feet wide across the rear of all the lots referred to, was a continuing burden. ▆ Words used in instruments are to be construed according to the ordinary meaning attached thereto and definitions or meanings not ordinarily attached thereto are not to be imported into the instrument unless the language of the writing compels such an interpretation. Again, if words are used in an instrument which have an ordinary, common, and also legal interpretation, and by long use have acquired such ordinary and legal interpretation, such interpretation will be followed unless language appears in the instrument compelling a different interpretation. In the instruments which we have before us there is nothing which compels an interpretation of the language used that departs from the common and the legal interpretation given thereto. With these statements as a premise, we may consider the three terms involved herein. ▆ First, as to ''easement'': In 19 C. J. 862, we find the term ''easement'' defined as ''a liberty, privilege or advantage without profit,

which the owner of one parcel of land may have in the lands of another; or to state it from the opposite point of view, it is a service which one estate owes to another, or a right or privilege in one man's estate for the advantage or convenience of the owner of another estate. Again, an easement or a servitude has been defined as a right which one proprietor has to some profit, benefit, . . . in or over the estate of another proprietor. . . . While it is always distinct from the occupation and enjoyment of the land itself, and does not confer title to the land, an easement is property and partakes of the nature of land. It is an incorporeal right—an incorporeal hereditament, and although only an incorporeal right and appurtenant to another, the dominant, tenement, it is yet properly denominated an interest in land which constitutes the servient tenement," etc. Other definitions are given, but they are simply in elaboration of what we have here set forth. ■ The easement referred to in the tendered deed of conveyance is unlimited as to time, and it further appears that the easement granted to the city, as we have said, covered a strip five feet in width, giving to the city the right of ingress and egress thereon, and as was said by this court in the case of *Switzler* v. *Robert A. Klein & Co.*, 94 Cal. App. 410 [271 Pac. 367], left to the owner no beneficial interest in the lots, save and except as to the light and air coming over the five-foot strip.

■ We come next to the terms, conditions and restrictions. The word "restrictions" being used in connection with the word "conditions" is only a part of one expression, and does not extend or amplify the definition or meaning of the phrase "conditions and restrictions." Thus, in 12 C. J., page 402, we find the following: "The word 'restriction,' when used in connection with the grant of interest in real property, has been construed as being the legal equivalent of 'condition,' and that either term may be used to denote a limitation upon the full and unqualified enjoyment of the right or estate granted. The words 'terms' and 'conditions' are often used synonymously when relating to legal rights." As to the definition of "conditions and restrictions," we quote the following from 12 C. J., page 400: "That which limits or modifies the existence or character of something; a restriction or qualification; . . . restriction or limitation modifying or destroying the original act with which it is

connected, or defeating, terminating or enlarging an estate granted; something which defeats or qualifies an estate; a *modus* or quality annexed by him that hath an estate, or interest or right to the same, whereby an estate may be either defeated, enlarged, or created upon an uncertain event; a quality annexed to land whereby an estate may be defeated; . . . a qualification or restriction annexed to a deed or device, by virtue of which an estate is made to vest, to be enlarged or defeated upon the happening or not happening of a particular event, or the performance or nonperformance of a particular act.'' Other definitions are given but these sufficiently illustrate the meaning of the words ''conditions and restrictions.'' They refer to the subsequent acts of the grantee in relation to the estate granted limiting his right to the use thereof, as in this case, and the erection of buildings costing not less than a certain sum, and at not less than a certain specified distance from the front line of the several lots mentioned. These conditions and restrictions, if violated, were to work a forfeiture of the estate and a return thereof to the grantors, but were to expire, by the terms of the instrument of conveyance, on January 1, 1940.

■ The foregoing we think demonstrates conclusively that the words ''conditions and restrictions'' appearing in the instructions given to the Title Company relative to the drawing of deeds and insuring title, do not include easements that may have been previously granted, and with which the record shows that the plaintiff was not familiar at the date of signing the instructions. ■ The record shows that on the twenty-fourth day of October, 1924, there was standing on the corner of one of the lots an electric light pole, and from this the appellants urge that this constituted a visible object of the easement theretofore granted and subsisting across all of said lots, giving the right of ingress and egress to the city over the five-foot strip. We do not need to follow appellants' argument or consider the cases holding that certain visible objects are sufficient to notify an intending purchaser of the existence of an easement. The mere statement of the claim that an electric light pole in the corner of one lot is sufficient to indicate the existence of an easement five feet wide for ingress and egress over the number of lots involved in this action, carries its

own refutation. In so far as there being nothing upon the premises to indicate the existence of an easement, and in so far as the existence of an unknown and undisclosed easement at the time of entering into the agreement of purchase and sale to which we have referred, this case is governed by the rules that this court followed in the case of *Switzler* v. *Robert A. Klein & Co., supra,* save and except that in the Switzler case the defendant, after exhibiting a map to the intending purchaser, not disclosing an easement, filed a map reserving an easement to the city, in which the lots involved were situated.

■ On the part of the respondent it is argued that the writing dated October 24, 1924, is an agreement of purchase. On the part of the appellants it is argued that it is only a receipt. While it is argued on the part of the appellants that the writing of October 27, 1924, is a binding agreement upon the appellants, a reading of the instrument shows that this contention is untenable. The instructions given to the Title Insurance and Trust Company are in no sense an agreement of purchase. It is not an agreement entered into with the owner of the premises for the purchase of the lots in question. It is simply a direction to the Title Insurance and Trust Company as to what was to be done by them. It is wholly without consideration and subject to modification or retraction at any time. If the contention of the appellants that the writing dated October 24, 1924, set out in this opinion is not an agreement of purchase and sale, then the record shows no agreement of purchase and sale. The evidence is clear that the parties involved in this action so regarded the writing to which we are making reference, and while it is deficient and lacking in many particulars, for the purposes of this case we will treat it as the agreement between the parties, or at least as evidencing the agreement between the parties. ■ This writing is silent as to the kind, character, qualification or limitation of title to be conveyed by the defendants to the plaintiff. It contains no reference to any easements, conditions or restrictions. And thus, as said in the case of *Smiddy* v. *Grafton,* 163 Cal. 16, quoting from page 18 [Ann. Cas. 1913E, 921, 124 Pac. 433, 434]: "Where one makes a contract in writing to sell and convey land, without any exception or reservation or provision as to the title or encumbrances, the law implies an agreement on his

part to convey a good title free of encumbrances. And if one encumbrance thereon is specifically provided for, there is an implied agreement that the title shall be conveyed free from any others.'' To support this quotation a large number of authorities are there cited. Likewise, in the case of *Easton* v. *Montgomery*, 90 Cal. 307, it is said, on page 314 [25 Am. St. Rep. 123, 27 Pac. 280, 282] : ''In every executory contract for the sale of land there is an implied condition that the title of the vendor is good, and that he will transfer to the vendee, by his deed of conveyance, a title unencumbered and without defect.'' (Citing a number of authorities.) That building restrictions constitute encumbrances conclusively appears from the citations found in the case of *Whelan* v. *Rossiter*, 1 Cal. App. 701 [82 Pac. 1082]. That a reservation of a right of way, though called an easement, constitutes an encumbrance, is definitely held in the case of *Rustigian* v. *Phelps*, 190 Cal. 608 [213 Pac. 957]. In that case it is held that partial payments made before the discovery of the easement might be recovered. The easement involved in the case at bar differs so radically from the easements involved in the cases referred to by appellants that the mere statement is all that is necessary to show their inapplicability. The easements referred to in the cases cited by appellants consisted of canals, ditches and embankments extending across the premises. These, of course, were visible objects extending across the premises, which anyone with ordinary vision could readily see, while a pole in a corner of one of several lots indicates nothing more than the existence of a pole. The record shows that there was no deed from Louis J. Wilde to the defendants, and that the defendants derived their title from one Simon, but as this may simply have been a clerical error, we attach no importance thereto. We do not deem it necessary to lengthen this opinion by a review of the testimony set forth in the briefs of the respective parties, further than to say it does not change the legal effect of the instruments to which we have referred, and also to add that it is somewhat conflicting as to the essential points involved, and that the trial court necessarily resolved the conflicting portions in favor of the plaintiff.

The judgment is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 26, 1929, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 25, 1929.

All the Justices concurred.