[Civ. No. 3036. Fourth Dist. July 14, 1942.]

JOSEPH MOBLEY et al., Respondents, v. RICHFIELD OIL CORPORATION (a Corporation), Appellant.

H. L. Dunnigan, Louis J. Irving and Wm. J. De Martini for Appellant.

N. E. Youngblood for Respondents.

BARNARD, P. J.—This is an action to rescind and cancel a written lease on the ground that it had been fraudulently obtained, and for declaratory relief. The main defense relied upon was a claimed waiver by the plaintiffs of the right of rescission through continued compliance, after discovery, with the terms of the lease and a sublease and the payment of certain amounts thereunder. The court found in all respects in favor of the plaintiffs finding, among other things, that the lease had been obtained by fraudulent representations, that the plaintiffs immediately after discovery had demanded the cancellation of the lease contract, and that the plaintiffs had acted as ordinary and reasonably prudent persons under the circumstances and had not waived their rights to a rescission and cancellation. From a judgment canceling the lease, the defendant has appealed. The property in question was owned by Nannie E. Mobley as her separate property and she will be referred to as the respondent.

In 1929, the respondent acquired certain lots in Mojave

upon which were located a motel, a cafe and a service station, all of which she has since owned and operated, the service station portion being also used for a number of purposes in connection with the cafe and motel. From 1929 to 1940, the respondent sold Richfield products in the service station under various contract arrangements. On June 15, 1938, she entered into a purchase and sale contract with the appellant under which she purchased gasoline and other products and under which she made a profit of five cents a gallon on gasoline, one cent per gallon of which was in the form of a rebate given to her by the appellant. This contract was to expire on July 30, 1940. Shortly before that date the parties began negotiations for a new agreement. Appellant's agent informed the respondent that because of certain policies of the company a new agreement similar in form to the old one could not be entered into; that it would be necessary for her to lease the service station to the appellant; that the appellant in turn would sublease the service station to the respondent's son, Roger White, who was working for his mother on a salary; that the son would simply be a "dummy"; that the change in the form of agreement was a matter of form only; that she could continue to operate the service station in the same manner as under the previous contract; and that she would receive the same profit. A ten-year lease from the respondent to the appellant and a short time sublease from the appellant to Roger White were executed on July 19, 1940, the entire transaction being carried on between the appellant and the respondent. The respondent did not read the lease, being assured by one Williams, an agent of the appellant, that there was no need for her to read it; that it was exactly as represented to her, and that it was the same contract as she then had except for the length of the term and Roger White's position as her "dummy."

In practical effect, the new arrangement differed from the one it was to succeed mainly in that under the new arrangement the profit which the respondent was to receive was divided into two classes, one in the way of rental under the lease and the other as profit on the sale of products. An important difference, however, which was unfavorable to the respondent and not disclosed to her, was that under the new arrangement the rental under the sublease and the purchase price of gasoline and other products purchased from appellant by the respondent were to be paid for monthly in cash,

with only a slight reduction from retail prices, and the larger part of the rental coming to the respondent under the main lease was not to be paid until the end of each year.

After the execution of the leases the respondent continued in possession and in operation of the service station exactly as she had previously done, paying the appellant for merchandise as she had been doing under the previous contract, and her son continued to work for her on a salary. The station continued under her sales tax permit, the same as before. The respondent first learned of the true nature of the contract on or about November 6, 1940, when the appellant through one Goddard demanded an additional payment of $225.71 for merchandise and rentals under the sublease and threatened to evict Roger White as subtenant. The respondent was then given a copy of the leases for the first time. Immediately, she demanded that an adjustment be made so that the contract would conform with her understanding of the terms and asked Goddard what he would advise. Goddard advised her to pay the $225.71 and stated that he would take the matter up with the appellant and have it adjusted to her satisfaction. The respondent paid the money and, when nothing was done, made a number of efforts to get in touch with Williams, appellant's agent who had concluded the original negotiations, asking him to come out and adjust the matter. He finally came out in December and promised to adjust the matter and return, but he never came back. The respondent consulted an attorney in January, 1941, and in an effort to adjust the matter the time for a settlement of the controversy was extended. No settlement having been reached a formal notice and demand for cancellation and rescission was served and this action was filed on February 11, 1941.

The appellant states as one of its grounds for reversal that the evidence does not support the court's findings that the execution of the lease was procured by a fraudulent representation, that the appellant had failed to paint the service station as it orally agreed to do, and that it had failed to erect certain electric signs in accordance with an oral promise made as an inducement to the execution of the lease. While some portions of the testimony are set forth in the opening brief no argument is made in this regard and the reply brief indicates an abandonment of this ground. In any event, the point is without merit as the evidence amply sustains the findings.

The appellant earnestly contends, however, that it must be

held as a matter of law that the respondent waived any right of rescission she might have had by continuing, after discovery of the fraud in November, 1940, to comply with appellant's demands and by receiving rent, purchasing gasoline, paying rent on the sublease, and paying for the merchandise in accordance with the terms of the lease and sublease of July 19, 1940, as the bills therefor were presented by the appellant. In addition to the general rule that a prompt disaffirmance is necessary, the appellant relies on such cases as *McGlynn* v. *Moore,* 25 Cal. 384; *Jones* v. *Maria,* 48 Cal. App. 171 [191 Pac. 943]; *Kern Sunset Oil Co.* v. *Good Roads Oil Co.,* 214 Cal. 435 [6 P. (2d) 71, 80 A. L. R. 453], in which it has been held that the acceptance of rent after full knowledge of the breach of a covenant to build or a covenant to drill for oil, unless the covenant breached was a continuing one, constitutes a waiver of the right to declare a forfeiture and terminate the lease. The general principle involved in such cases is that a party having knowledge of the breach has no right to continue to accept benefits to which he would not be entitled if he desired to exercise his right of forfeiture.

In our opinion, different principles are applicable under the circumstances here appearing and the cases relied upon by appellant are not controlling. This action involves the setting aside of a contract on the ground that it was never legally entered into, rather than the termination of a contract because of a subsequent breach giving rise to the right of forfeiture. While forfeitures are not favored, relief from established fraud is another matter. Moreover, the respondent did not continue to receive benefits arising from the contract and to which she could not otherwise be entitled, under the rules and principles properly applicable to the situation which here appears. It has been said that a claimed waiver of the right of rescission for fraud "ought to be watched with the utmost strictness, and to stand only upon the clearest evidence as an act done with all the deliberation that ought to attend a transaction the effect of which is to ratify that which in justice ought never to have taken place." (See *Green* v. *Duvergey,* 146 Cal. 379 [80 Pac. 234].) In such a case the burden is on the party asserting and relying on a waiver to prove it by evidence which does not leave the matter doubtful or uncertain. (*Aronson* v. *Frankfort etc. Ins. Co.,* 9 Cal. App. 473 [99 Pac. 537]; *Mott* v. *Cline,* 200 Cal. 434 [253 Pac. 718].)

In *Munson* v. *Fishburn,* 183 Cal. 206 [190 Pac. 808], it

was held that the payment of assessments on stock after discovery of the fraud did not necessarily bar a right of rescission. In *French* v. *Freeman*, 191 Cal. 579 [217 Pac. 515], where the trial court had found that the plaintiff had not waived the right of rescission, the court said: "The question of waiver or nonwaiver was one of fact for the trial court to pass upon, and the acts or conduct which defendant claims constituted said waiver were the evidence to be considered in determining the ultimate fact of waiver or nonwaiver. . . . Whether or not a person has ratified a voidable contract, or elected to affirm it rather than to rescind it, depends primarily upon his intention, and this is shown by his declarations, his acts, or his conduct, which are matters of fact. The question is, therefore, a question of fact for the determination of the jury." In *Sutton-Watts* v. *Sarnow*, 80 Cal. App. 91 [251 Pac. 654], a payment was made after notice of rescission and another payment after the action was filed. The court there said: "Respondent's intention to rescind was clearly manifested by the prompt service of notice to that effect, which was followed and confirmed by the commencement of suit, and we think that the payments mentioned, standing alone, cannot be reasonably construed as a revocation of the legal course already adopted by her to rescind the sale, nor did the fact that they were made mislead the appellant or operate to respondent's benefit, but, as remarked by the trial court, were doubtless made by respondent under the fear that if she defaulted in that respect she would become more deeply involved." " 'In the absence of an express agreement a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to.' " (*Craig* v. *White* 187 Cal. 489 [202 Pac. 648]; 27 R. C. L., p. 908.)

In *Switzler* v. *Robert A. Klein & Co.*, 94 Cal. App. 410 [271 Pac. 367], it was held that there was no waiver of a right to rescind where on discovery the plaintiffs employed an attorney to investigate the facts and to take up with the defendant the matter of adjustment and settlement. The court said: "The record shows that no considerable time elapsed while these negotiations were being carried on, and instead of being construed as a waiver of any rights to rescind, we think the effort to secure settlement without litigation should be looked upon favorably." It was also claimed in that case

that the plaintiffs had waived the right to rescind by making one of the monthly payments on the purchase price of the property after the discovery of the fraud and during the period of attempted settlement. In that regard the court said: "While the payment of the purchase price has in many cases been held to indicate a ratification, it cannot be held that keeping up monthly payments for a short period of time during the pendency of negotiations seeking a settlement, is such a ratification as to bar rescission. Such payments, under the circumstances, constituted merely facts or acts to be considered by the trial court in determining whether the plaintiffs had or had not ratified the transaction." It was further held in *Curtis* v. *Title Guarantee etc. Co.,* 3 Cal. App. (2d) 612 [40 P. (2d) 562, 42 P. (2d) 323], that the making of payments after discovery is not necessarily a waiver of rescission where fears have been lulled by representations or promises of the other party.

In the instant case, it appears that the respondent protested and demanded an adjustment immediately after discovery of the fraud; that she was advised by an agent of the appellant to pay the amount claimed and he promised to have the matter adjusted; after considerable effort the respondent secured an interview with Williams, the agent of appellant who had been in charge when the contract was executed; when he finally appeared he promised to adjust the matter; after a not unreasonable time an attorney was consulted with a further attempt to adjust the matter; and notice and demand for rescission were then given, followed by the filing of this action. The respondent was attempting at all times to bring the matter to an adjustment, she was lulled by the acts and promises of the appellant, and the appellant was in no way misled as to her intentions. If she had not kept up the rentals on the sublease, paid for the merchandise furnished her and made the payments demanded from her, she might well have feared that she would lose control of the property in question. She might then have been in an intolerable position in view of the relation and connection of the leased property to the other portions of her business enterprise. As the court specifically found, the appellant had not painted the buildings, erected the signs or made any other expenditures, and it was in the identical position it had been in before the lease contract was executed. The appellant was not mislead or prejudiced and the respondent received no benefit to which she was not otherwise entitled, by her efforts to keep the

matter *in statu quo* until the case could be tried. Under the principles and rules to which we have referred it cannot be held, as a matter of law, that respondent waived her right to rescind and the court found to the contrary upon rather clear and convincing evidence.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.