[Civ. No. 16355. Second Dist., Div. Three. Dec. 29, 1948.]

JOHN F. ESAU, Respondent, v. WALTER M. BRIGGS, Appellant.

Derthick, Cusack & Ganahl for Appellant.

C. C. Dillavou for Respondent.

WOOD, J.—This is an action to rescind an agreement to sublease certain premises, and to recover the consideration paid. The plaintiff alleged, and the court found, that plaintiff had entered into the agreement as the result of fraudulent misrepresentations on the part of defendant and his agent. Judgment was entered in favor of plaintiff, and defendant appeals from the judgment.

Appellant contends that the evidence was insufficient to support findings by the trial court: that there was fraud on the part of defendant; that the lease and sublease were terminated; and that the cause of action was not barred by laches. He also contends that plaintiff should have given a notice of rescission, and should have made an offer of restoration, prior to the commencement of this action; and that plaintiff waived his right to rescind.

Defendant was in the business of operating automobile parking lots in Los Angeles. He had conducted such a business for a number of years at 749 Maple Avenue, which premises he occupied at times under a written lease and at times under a month-to-month tenancy. In 1945, he sublet the premises to another person on a month-to-month basis. The subtenant conducted the parking lot business, and paid defendant a monthly rental in the same amount as defendant was paying the owner of the property. In August, 1945, at which time

defendant was renting the premises as a month-to-month tenant, he asked the owner of the property, The Huntington Land and Improvement Company, for a lease, stating that he wished to make some improvements on the property. The owner and defendant then entered into a written lease for a term of three years beginning September 1, 1945, which lease provided that defendant pay a rental of $225 a month during the first year of the term and $250 a month during the last two years of the term. The lease also contained a provision which gave the lessor the right to terminate the lease under certain conditions, one of which was the sale of the premises, by giving the lessee 60 days' written notice of its intention to do so. Thereafter defendant had the parking lot paved, and listed his leasehold interest for sale with one J. J. Krenn, a real estate broker, who placed the following advertisement in a daily newspaper: "Auto park. dntn. & maker. 3 yr. lease. Pr. $4500. Krenn, 307 W. 8." Plaintiff read the advertisement and, on November 19, 1945, went to see Mr. Krenn, who gave him the address of the parking lot and told him he could look at it. That same day plaintiff went to the parking lot and talked with defendant's tenant about the business. He then telephoned Mr. Krenn and told him he was interested in the property. The following day plaintiff returned to Mr. Krenn's office and told him he wanted to "put a deposit down." At that time he signed a contract which provided that plaintiff agreed to purchase the "Auto Park Leasehold & goodwill of business," at a total price of $4,500, and that the existing lease would be assigned to plaintiff or "a satisfactory sublease drawn." Plaintiff thereupon paid a deposit of $1,500 to Krenn. On November 26, 1945, plaintiff, his brother-in-law, and Krenn went to the office of defendant where plaintiff was handed a typewritten sublease to read, which contained a provision that the lessor therein (defendant) had the right to terminate the sublease by giving the sublessee 60 days' written notice of his intention to do so. No conditions upon which the lessor might exercise the right were stated in the sublease. Said sublease recited that it was for the term of two years and nine months, and it provided for monthly rental in the same amounts as required by the lease, that is, $225 a month for the remaining nine months of the first year of the term, and $250 a month for the remaining two years of the term. After reading the said sublease, plaintiff signed it, paid the balance of $3,000

on the purchase price, and the amount of rent for the last month of the term. On November 27, 1945, plaintiff went into possession of the premises. On December 10, 1945, the premises were sold to Al and Rosalind Hammerman. The seller, The Huntington Land and Improvement Company, wrote a letter to defendant, dated January 2, 1946, in which it informed him that the property had been sold "subject to its lease thereon to you," and stated further that its interest in the lease had been assigned to the purchasers. The Huntington Land and Improvement Company also wrote a letter to the defendant, dated January 7, 1946, before the escrow was closed, in which it demanded that he deliver up possession of the premises to them at the end of a 60-day period, which period would commence on the 10th of January and end on the 11th of March, 1946. Upon learning that the property had been sold, plaintiff went to see defendant and told him that the sublease was no good and he wanted his money back. The defendant then showed him the letters above referred to, and went with him to the office of the real estate broker who had negotiated the sale of the parking lot and asked him to see what Mr. Hammerman would do regarding plaintiff's tenancy. About a week later, plaintiff asked defendant for the two letters from The Huntington Land and Improvement Company for the purpose of showing them to his attorney. He received the letters, and later returned them to defendant. Thereafter plaintiff paid the rent for the month of February to the defendant, who paid it to Mr. Hammerman. Prior to March, 1946, plaintiff and Mr. Hammerman entered into an oral agreement whereby plaintiff was to continue in possession of the premises until such time as Mr. Hammerman "built on the property." The agreement also provided that plaintiff was to pay Mr. Hammerman a rental of $400 a month. On March 1st, and thereafter, plaintiff paid his rent directly to Mr. Hammerman. On June 28, 1946, Mr. Hammerman served a notice on plaintiff requiring him to surrender possession of the premises by August 1, 1946. Plaintiff vacated the premises on July 30, 1946. Prior to that time, on June 19, 1946, he had commenced this action.

Plaintiff testified that the first time he went to see Mr. Krenn he asked him if the advertisement was right as to the lease being for three years and that Mr. Krenn answered "Yes"; that the second time he went to see him, when he paid the deposit of $1,500, Mr. Krenn told him he "would

get a 3-year lease''; that he would not have given the deposit
had he known there would not be a three-year lease; that
he later went to defendant's office where he read the sublease;
that he ''stopped'' when he came to the ''60-day clause'' and
told defendant that he had never heard of a clause like that,
and he did not know whether ''he wanted the lot now or not'';
that defendant told him most parking lot leases in Los
Angeles had such a clause—that he (defendant) had ''had
the lot quite a time and he knew the lot wasn't up for sale
and they weren't going to sell the lot and they weren't
trying to sell the lot,'' and it was not listed for sale; that
plaintiff's brother-in-law, who was present, told plaintiff he
was not sure he would enter into the lease with that clause
in it; that Mr. Krenn, who also was present, then stated that he
had ''dealt'' with defendant for 22 years and that he was
an honest man and would not ''try to gyp anybody''—that
plaintiff could take defendant's word for it ''the land wouldn't
be sold''; that he (plaintiff) did not see the lease to the
property; that he asked defendant if he could see the owner,
and defendant replied that plaintiff would be ''dealing with''
the defendant and paying the rent to defendant and there
would be no reason for him to see the owner; that he believed
the defendant was telling him the truth; that he ''had run
up against something'' he had never seen before and he
''didn't know much about the lease,'' and he took the ''word''
of defendant and Mr. Krenn for what they told him. Plaintiff
testified further that he finished school in 1939; that he had
completed two years of college; that he had worked for a
short time in a woodworking plant and then ''joined the Army
in 1940,'' and was discharged on January 8, 1946.

Plaintiff's brother-in-law, called as a witness on behalf of
plaintiff, testified that he accompanied plaintiff to the office
of defendant at the time he signed the sublease; that defendant
told plaintiff that he had already signed ''some papers,'' and
given a down payment and he ''had nothing to worry about,
that he would have a 3-year lease''; and that defendant told
plaintiff the property was not for sale and was not going
to be sold.

An executive of The Huntington Land and Improvement
Company, called as a witness on behalf of plaintiff, testified
that the property here involved had been listed for sale
''from time to time''—first with one agent and then with
another; and that it was ''definitely'' listed for sale during
''the entire year'' of 1945.

Another witness, called on behalf of plaintiff, testified that he was a real estate broker; that he and another broker "handled" the sale of the property here involved; that the property had been listed with them for sale about October 5, 1945; that after the sale, plaintiff and defendant came to see him, and defendant asked him if there was any "chance of lining up a new deal"; that he told them to deal directly with·Mr. Hammerman, and he telephoned Mr. Hammerman for them.

Mr. Krenn, called on behalf of plaintiff, testified that at the time plaintiff came to his office and inquired about the advertisement, the witness did not have, and had not seen, the original lease or the sublease; that he told plaintiff "There is a 3-year lease on this lot and that he would be able to read the lease" and see exactly what was in it.

Plaintiff's counsel testified that plaintiff first called upon him the latter part of March or the first part of April, 1946; that he did not "recall" that plaintiff brought any papers with him at that time, but he later brought the two letters which had been written to defendant by The Huntington Land and Improvement Company.

Defendant testified that he operates "several properties" in Los Angeles as parking lots, and has been in that business about 16 years; that during that time he had sold and bought several parking lots; that after the lease was entered into, the person who had been operating the parking lot on a month-to-month basis began operating it on a "day-by-day basis"; that he was supposed to pay defendant $9.00 a day, and at the end of the month defendant "would probably get" $225.

Mr. Krenn, also called on behalf of defendant, testified that he told plaintiff and plaintiff's brother-in-law that the possibility of a "sale or anything happening to the lease" was remote.

 Appellant contends, as above stated, that the evidence was insufficient to support a finding of fraud on the part of defendant. As to the issue of fraud the court found, among other things, that defendant's agent had falsely represented to plaintiff that the defendant would give him a lease or sublease on the premises "for an indefeasible 3-year period"; that defendant had falsely represented to plaintiff that the property was not for sale; that they made such representations as positive statements and in a manner not warranted by the

information they possessed; that they were in a position to know or readily to ascertain the true facts; that said misrepresentations were made for the purpose of defrauding plaintiff and to induce him to enter into the sublease; that plaintiff relied, and had a right to rely, upon those representations, and he was damaged in so relying upon them. In determining the sufficiency of the evidence to support those findings, this court must "resolve all conflicts in plaintiff's favor and draw all permissible inferences necessary to support the judgment." (*Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 422 [159 P.2d 958].) As above shown, there was evidence that Krenn advertised a three-year lease for sale; that at the time of signing the contract with Krenn to purchase the "Leasehold" and good will of the business, plaintiff had not seen the lease or sublease; that he signed the contract and paid a deposit of $1,500 in the belief that he was purchasing a full three-year lease and not a term of two years and nine months. There was also evidence that when defendant told plaintiff, on November 26, 1945, that the property was not for sale and would not be sold, it was then for sale and had been continuously for sale since the first of the year 1945. Krenn also told plaintiff that the possibility of a sale was remote. The evidence indicated that defendant was anxious to dispose of his leasehold interest. He had not been making a profit on the parking lot and he had entered into the lease for the purpose, according to his testimony, of improving the property and then selling the lease. When plaintiff, after reading the termination clause, expressed doubt as to whether he should proceed with the transaction, defendant told him that he had already signed "some papers" and made a down payment. Plaintiff was not experienced in business transactions and was not familiar with business customs. He had had no previous experience with leases and knew nothing about the business of conducting a parking lot. The business experience of defendant and his agent was much superior to that of plaintiff. It appears that plaintiff knew that defendant and his agent were experienced in such transactions. Plaintiff relied, as above shown, on their representations. ▮ Plaintiff, under the circumstances here, had the right to rely on the representations of the vendor as to facts not within the plaintiff's knowledge. (See *Sullivan* v. *Helbing*, 66 Cal.App. 478, 483 [226 P. 803]; *Pohl* v. *Mills*, 218 Cal. 641, 651 [24 P.2d 476].) ▮ Even when a party is under no duty

to speak as to a matter, if he does speak, he must speak the truth and "make a full and fair disclosure." (*Rogers* v. *Warden,* 20 Cal.2d 286, 289 [125 P.2d 7].)

■ Appellant argues that plaintiff was negligent in failing to investigate and ascertain the truth. The truth of the representation that the property was not for sale could have been ascertained accurately only by communicating with the owner of the property. The trial court found that defendant prevented plaintiff from knowing the identity of the owner of the land. That finding is supported by plaintiff's testimony that he did not see the lease, and his testimony that he asked defendant for the name of the owner of the property and that defendant told him he would be dealing with the defendant and there would be no reason for him to see the owner. Furthermore, had the means of knowledge been open to plaintiff, his failure to investigate would not necessarily have precluded him from relief. ■ It is only "when the circumstances are of such a character that inquiry becomes a duty is the failure to make it a negligent omission." (*Anderson* v. *Thacher,* 76 Cal.App.2d 50, 71 [172 P.2d 533] ; see also *Carpenter* v. *Hamilton,* 18 Cal.App.2d 69, 71 [62 P.2d 1397].)

■ The evidence was sufficient to support the findings, above mentioned, regarding fraud.

■ Appellant also contends that the evidence was not sufficient to support a finding by the trial court to the effect that the lease and sublease had been terminated. He argues, in effect, that the notice of termination was not effective, since The Huntington Land and Improvement Company was not the lessor at the time it gave the notice—it having sold the property before the notice was served. An executive of The Huntington Land and Improvement Company testified that he signed the notice, which was dated January 7, 1946, and mailed it to the escrow holder to be served on defendant at the time the escrow was completed. It is unnecessary, however, to determine the sufficiency of that notice since there was evidence to support the trial court's finding that the defendant "accepted and acquiesced in" the termination of the lease and "abandoned and surrendered any interest" he had in the premises. Defendant, in his answer, alleged that when the plaintiff notified him that he had entered into a lease with the purchaser of the property, the "defendant acquiesced in said arrangement and abandoned and released and cancelled his said lease with The Huntington Land &

Improvement Company.'' Plaintiff testified that defendant told him in January that The Huntington Land and Improvement Company had ''canceled'' his lease, and that defendant said ''he would go to the new owner and get a new lease on the land''; that plaintiff and defendant then went to the office of Mr. Hammerman's real estate agent where there was a discussion regarding the possibility of plaintiff obtaining a lease from Mr. Hammerman. When plaintiff told defendant he was going to pay the rent to the new owner, defendant said ''Go ahead,'' that it was ''all right'' with him. Defendant paid no rent and collected no rent for the premises after March, 1946. At no time thereafter did he assert an interest in said premises, and he conducted himself in a manner inconsistent with the manner of one claiming an interest therein. He testified that he had no interest in the lease—that he had put plaintiff in his ''place at all times in regard to the premises.'' The court properly found that defendant had accepted the termination of the lease.

Appellant asserts that the plaintiff, prior to commencing this action, should have made an offer to restore the benefits received under the sublease. As a general rule it is necessary for a party attempting to rescind a contract to restore, or offer to restore, the benefits received as a condition precedent to bringing the action. If there is nothing to restore, however, such offer is not required. (*California etc. Co.* v. *Schiappa-Pietra*, 151 Cal. 732, 739 [91 P. 593].) The plaintiff did not receive anything under the contract to restore to defendant. Appellant argues, in effect, that plaintiff should have restored possession of the premises to him. As above shown, defendant's lease had been terminated and he had no further interest in, or right to possession of, the premises under his sublease with defendant but, after March, 1946, was in possession under another agreement with the new owner and at a greatly increased rental—$400 a month instead of $225. An offer to restore on the part of plaintiff would obviously have been an idle act. The only benefit plaintiff received under the sublease was the use and occupancy of the premises for a period of about three months, and for which time he paid defendant the agreed rental. Plaintiff therefore was unable to return that which he received under the sublease. Under such circumstances the element of restoration is not a legal requirement. In the case of *Rosemead Co.* v. *Shipley Co.*, 207 Cal. 414 [278 P. 1038], the court,

in holding that a notice of rescission and an offer to restore prior to suit were not necessary, said at page 422: ''This is especially true in equity where fraud is the basis of the claim and no legal prejudice to the defendants could have resulted.'' Appellant also contends that a notice of rescission should have been given prior to commencing the action. Under the circumstances here, the commencement of this action was sufficient notice of rescission. (See *Rosemead Co.* v. *Shipley Co., supra,* p. 422.) The action herein was based on fraud, and there was nothing to restore to defendant. In the case of *Rosemead Co.* v. *Shipley Co., supra,* the court also said at page 422: ''Enough appears to conclusively show that a notice of rescission and offer to restore prior to suit was not necessary in this case, as the plaintiffs received absolutely nothing under any of the writings sought to be annulled.''

Appellant also contends, in effect, that plaintiff waived his right to rescind by remaining in possession of the premises, and enjoying the good will of the business after he had learned the facts constituting the alleged fraud. It was stated in *Neet* v. *Holmes,* 25 Cal.2d 447 [154 P.2d 854], at page 458, that the right to rescind ''is waived by recognition of the existence of the contract after the right to rescind was created.'' ▮ The question as to whether a party's acts and declarations show an intent to waive the asserted fraud in procuring execution of a contract is one of fact for the trial court. (*Schied* v. *Bodinson Mfg. Co.,* 79 Cal.App.2d 134, 143 [179 P.2d 380]; see also *Heller* v. *Melliday,* 60 Cal.App.2d 689, 695 [141 P.2d 447].) ▮ Appellant's argument is apparently based upon the theory that plaintiff remained in possession of the premises until July 30, 1946, by virtue of the sublease; in other words, that a landlord-tenant relationship existed between them until plaintiff vacated the premises. There is no merit in that argument. It is true, as asserted by appellant, that plaintiff entered into possession of the premises under the sublease, but there is no evidence, other than plaintiff paying the rent to defendant for February, that plaintiff, by any act or declaration, recognized the existence of the contract with defendant after learning of the sale of the property. Upon learning of said sale he immediately went to defendant and told him the sublease was no good and he wanted his money back. Thereafter he entered into an oral agreement directly with Hammerman by which he was given an indefinite term on a month-to-month basis and at an increased rental. Plaintiff notified defendant that

he had entered into that agreement and thereafter was going to pay rent to Hammerman. That agreement made no reference to, and had no connection with, the sublease which plaintiff had entered into with defendant. All interest of defendant in the property, which was the subject matter of the oral agreement, had ceased to exist and plaintiff, by entering into the agreement with Hammerman and remaining on the premises pursuant to such agreement, was not asserting any rights or accepting any benefits under the sublease with defendant. Defendant stated that plaintiff recognized the validity of the sublease by paying defendant the rent for the month of February after he had learned of the sale of the property. ▆▆▆ Whether a party has ratified a voidable contract depends primarily upon his intention. The evidence does not disclose any declarations or actions on the part of plaintiff which indicated that he intended to ratify the contract with defendant. The evidence does show that the former owner and the new owner of the property, and the plaintiff and the defendant considered that defendant's lease on the property did not terminate until March, 1946. It was stated in the case of *French v. Freeman,* 191 Cal. 579 [217 P. 515], at page 590, "Whether or not a person has ratified a voidable contract, or elected to affirm it rather than to rescind it, depends primarily upon his intention, and this is shown by his declarations, his acts, or his conduct, which are matters of fact. The question is, therefore, a question of fact for the determination of the jury."

Appellant's further contention that the evidence was insufficient to support the trial court's finding that plaintiff's right of rescission was not barred by reason of laches is not sustainable. Section 1691 of the Civil Code requires that a party "must rescind promptly, upon discovering the facts which entitle him to rescind, if he . . . is aware of his right to rescind. . . ." Just how long plaintiff delayed in commencing the action after becoming aware of his right to rescind is not clear, but it was not longer than five months. ▆▆▆ The doctrine of laches does not rest entirely upon lapse of time, and it does not require any specified period of delay. (*Neet v. Holmes, supra,* p. 460.) ▆▆▆ Whether a defrauded party has rescinded "promptly" depends upon all the circumstances of the particular case. (*Noll v. Baida,* 202 Cal. 98, 109 [259 P. 433].) ▆▆▆ It does not appear, in the present case, that the defendant suffered any injury on account of plaintiff's delay. As stated in *Curtis v. Title Guarantee etc. Co.,* 3 Cal.

App.2d 612, at page 621 [40 P.2d 562, 42 P.2d 323], the question of laches "being one of fact, and no abuse of discretion appearing, we are bound by the finding."

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied January 25, 1949, and appellant's petition for a hearing by the Supreme Court was denied February 24, 1949. Schauer, J., and Spence, J., voted for a hearing.