[Civ. No. 18224. Second Dist., Div. Three. July 13, 1951.]

L. MAYER, Respondent, v. NORTHWOOD TEXTILE
MILLS, INC. (a Corporation), Appellant.

Bachrack & Wilson and Henry Muller for Appellant.

Benjamin & Lieberman for Respondent.

VALLÉE, J.—Plaintiff, as assignee of Emanuel Kramer, brought this action to recover the purchase price paid defendant for yardage upholstery material. The material was purchased by sample and by description. The complaint alleged, and the court found, that the material delivered did not conform to the samples submitted or to the quality ordered; that, on ascertaining the inferior quality of the material, Kramer rescinded the purchase and tendered the material to defendant, which refused to accept it. Judgment was for plaintiff for the purchase price and an amount paid for freight. Defendant filed a cross-complaint against Kramer in which it alleged that about November 5, 1947, Kramer converted to his own use certain other upholstery material belonging to defendant. The judgment on the cross-complaint was for plaintiff.

### The Case on the Complaint

Defendant's claims for reversal are: (1) there is no evidence to support the buyer's claim that the bulk of the goods delivered did not correspond to the samples identified in the

written contract of sale; (2) the buyer's use and retention of the goods barred any claim of rescission of the sale; (3) the buyer lost any right of rescission by his failure to act promptly. The claims are untenable.

Defendant's office was in Philadelphia. Kramer, doing business in Los Angeles, ordered the material by samples and specific description on April 28, 1947. There was ample evidence that the material delivered did not conform to either the samples or the description. Kramer so testified. Experts called by plaintiff so testified in detail. The order described two types of material. The court had before it a sample of one type and some of the material delivered, which was to conform to that sample. It also had before it some of the second type of material delivered. The trial judge was thus in a position to determine from an inspection of the material delivered whether it conformed to the description of that ordered.

The material was shipped in two lots. The first lot, shipped by rail freight, was delivered about the middle of May, 1947. The second lot was shipped by water. A few days after Kramer received the first lot, it was unpacked and put into bins. Samples were cut and distributed to prospective customers, and a small piece was sold, before an inspection was made. About two weeks later the customer complained. Kramer then inspected the material and discovered that it was defective. Kramer's son went to Philadelphia, called on defendant during the first week in June, 1947, informed its secretary and comptroller of the customer's complaint and that Kramer had then thoroughly inspected the lot received by rail and found that it did not conform to either samples or description. The secretary asked Kramer's son to wait until the balance of the order had been received by water and if it was found that the bulk of the shipment did not conform, to let him know. The material shipped by water was delivered to Kramer in separate lots about the second week in June. He immediately inspected it and found that it did not conform to either samples or description. On July 19, 1947, Kramer tendered the material he had received to defendant upon condition that defendant pay him the price thereof and the amount expended by him for freight. Defendant declined the offer.

Where there is a sale of goods by description, there is an implied warranty that the goods shall correspond with the description; and if the sale be by sample as well as by description, it is not sufficient that the bulk of the goods corresponds

with the sample if the goods do not also correspond with the description. (Civ. Code, § 1734.) "Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality." (Civ. Code, § 1735(2).) Defendant dealt in goods of the description ordered. Civil Code, section 1736, reads: "In the case of a contract to sell or a sale by sample: (a) There is an implied warranty that the bulk shall correspond with the sample in quality. (b) There is an implied warranty that the buyer shall have a reasonable opportunity of comparing the bulk with the sample, except so far as otherwise provided in section 1767(3). (c) If the seller is a dealer in goods of that kind, there is an implied warranty that the goods shall be free from any defect rendering them unmerchantable which would not be apparent on reasonable examination of the sample." Section 1767(3) provides a right to examine goods on c.o.d. shipment. Civil Code, section 1768, reads: "The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

To effect a rescission a party must rescind promptly upon discovering the facts which will entitle him to rescind if he is aware of his right to rescind and if he offers to restore everything of value which he has received under the contract upon condition that the other party do likewise. (Civ. Code. § 1691.) ▓ Whether a party has rescinded promptly depends on the circumstances of the particular case. (*Esau* v. *Briggs*, 89 Cal.App.2d 427 [201 P.2d 25].) ▓ ▓ The burden of proving a waiver of the right to rescind is on the party asserting and relying on the waiver—in this case the defendant—and the question is one of fact. (*Mobley* v. *Richfield Oil Corp.*, 53 Cal.App.2d 406 [128 P.2d 105].) ▓ Whether a buyer rescinded promptly is a question of fact. (*Miller* v. *Eisenberg*, 90 Cal.App.2d 479, 482 [203 P.2d 11].) ▓ There is no hard or fixed rule as to the lapse of time or circumstances that will justify the application of the doctrine of laches. (*Wagaman* v. *Clifford F. Reid, Inc.*, 5 Cal.App.2d 168, 171 [42 P.2d 678].) ▓ The conclusion of the trial court will not be set aside by a reviewing court if

it finds reasonable support in the evidence. (*McCray* v. *Title Ins. & Trust Co.*, 12 Cal.App.2d 537, 538 [55 P.2d 1234].) In the present case it is obvious that we cannot say, as a matter of law, that Kramer accepted the material or that he did not rescind promptly or that he used or retained the material in such a manner as to have waived his right to rescind. ▮ The mere fact that Kramer cut samples and distributed them to prospective customers and sold a small piece of material without knowledge that the material was defective did not, as a matter of law, constitute an acceptance of the material or a waiver of his right to rescind.

### The Case on the Cross-Complaint

Prior to the transaction complained of in the complaint, Kramer had purchased some upholstery material from defendant and cross-complainant which was defective. The parties reached a satisfactory adjustment by which cross-complainant retained title to the material and Kramer agreed to retain possession of it and to endeavor to sell it for a commission. Cross-complainant also shipped some additional material to Kramer on consignment. When this action was instituted, plaintiff caused a writ of attachment to be issued and levied on the material in Kramer's possession. Cross-complainant says that the consignment was in the nature of a trust, that Kramer breached the trust by causing the attachment to be levied, and that a conversion resulted. As we have said, judgment on the cross-complaint was for cross-defendant. ▮ The general rule is that any creditor, whether he is the original creditor or has succeeded by assignment to the rights of another, is entitled to invoke the remedy of attachment. (7 C.J.S. 209, § 20a; 4 Am.Jur. 631, § 123.) ▮ In this state, as a rule, any person standing in the position of a creditor and having a claim satisfying the requirements of section 537 of the Code of Civil Procedure may invoke the remedy.

Assuming, without deciding that a trust relationship existed between Kramer and cross-complainant as to the consigned material and that plaintiff assignee in causing an attachment to be levied acted on behalf of Kramer, those facts did not preclude plaintiff from enforcing his rights as a creditor of cross-complainant or from invoking the remedy of attachment in doing so. ▮ A creditor who occupies a fiduciary relationship with his debtor is not thereby compelled to forego the rights which he would have if he occupied the status of creditor alone. (*Title Ins. etc. Co.* v. *California Dev. Co.*, 171 Cal.

173, 214 [152 P. 542] ; *Kleinsasser* v. *McNamara,* 129 Cal.App. 49, 59-60 [18 P.2d 423].) In bringing an adversary action against defendant through an assignee and in availing himself of the right of any creditor to levy an attachment, Kramer was not in any way taking advantage of his position as consignee. The rights sought and asserted by him were entirely independent of his fiduciary status. We hold, therefore, that in causing an attachment to be issued and levied, Kramer did not convert the consigned material to his own use.

 There was evidence that defendant mailed a letter at Philadelphia addressed to plaintiff at Los Angeles, demanding return of the consigned goods. There was also testimony that the letter was not received until the day following the attachment. The evidence supports the conclusion that failure to comply with the demand did not amount to a conversion.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied July 31, 1951, and appellant's petition for a hearing by the Supreme Court was denied September 7, 1951.