[Civ. No. 5790.   Fourth Dist.   Jan. 12, 1959.]

PHILLIP R. WARFIELD et al., Respondents, v. JACK C. RICHEY et al., Appellants.

Walley & Davis for Appellants.

Taylor F. Peterson for Respondents.

SHEPARD, J.—On November 21, 1955, plaintiffs Phillip R. Warfield and his wife Nancy Jeanette Warfield (hereinafter called plaintiffs) and Jack C. Richey (hereinafter called defendant) entered into a lease agreement whereby defendant leased to plaintiffs a hotel and motel at Needles, California, for a term of five years from December 1, 1955, at a rental of 25 per cent of the gross income. The lease contained a deposit requirement of $5,000 as lease security and $3,000 in escrow to be spent in improvements (in the case of neither deposit does the lease say where the deposit shall be made nor does it prescribe conditions of control). Lessor agrees to give lessees access to lessor's books for the preceding year to verify income and operating expenses. Lessor further agrees to make repairs to the marquee and outside of the building, to keep the roof and other parts of the building in good repair, and to cause inspection and put into good operating condition the air conditioning and heating units.

On July 5, 1956, plaintiffs brought an action (85923) alleging violation by defendant of the agreement and on information and belief that the alleged statement by defendant that there had been $25,000 gross income during the year preceding date of lease was false, and asked for cancellation and damages. After filing an answer and some intermediate proceedings defendant, on September 12, 1956, filed notice of motion for permission to file an amended answer and cross-complaint, and on September 14th plaintiffs filed notice of motion for permission to file an amended complaint. On September 24th, the trial court denied permission to file the amended complaint on the ground that it attempted to state a new cause of action, and granted defendant's motion to file an amended answer and cross-complaint. On the same day, plaintiffs caused said action 85923 to be dismissed, and on

October 2, 1958, filed this action (86834) alleging false representations as an inducement to the making of the lease, refusal to permit inspection of books, refusal to make agreed repairs, the expenditure of $1,600 on improvements, notice of rescission, offer by plaintiffs to restore everything of value received, with a prayer for cancellation of the lease, return of $5,000 deposit, return of $1,600 expended on improvements, and $5,000 for services rendered in operating the hotel and motel.

On August 16, 1956, the defendant filed an action (86409) in unlawful detainer against these plaintiffs, alleging breach by nonpayment of rent and asking restoration of premises, etc.

After issue joined in both actions, causes were consolidated for trial, tried, and the court found generally in favor of plaintiffs on the allegations of false representation and of promises made without intent to perform; that defendant failed and refused to give plaintiffs access to defendant's books for verification of income during the year preceding the agreement; that defendant failed to repair the marquee and other damaged portions on the outside of the hotel or its roof, and other parts of the hotel; that defendant failed to keep the property in good repair; that defendant failed to have the air conditioning and heating units put in good operating order; that the deposits of $5,000 and $3,000 required to be made by plaintiffs were made; that $1,600 was expended by plaintiffs on improvements; that notice of rescission was duly given; that the reasonable value of the use and occupation of the premises during the period occupied by plaintiffs under the circumstances of the occupation was $3,884.56; that the equitable time proportionate refund value of the $1,600 expended by plaintiffs for improvements is $1,217.88; that the $5,000 deposit plus the refund of $1,217.88 totals $6,217.88, and decreed this to be owed from defendant to plaintiffs; that the amount owed from plaintiffs to defendant is the reasonable value of the use and occupation of the premises or $3,884.56, making a balance of $2,333.32 adjudged to be paid by defendant to plaintiffs; that the lease be cancelled and rescinded; and that defendant's action in unlawful detainer was unjustified.

This court has reviewed the entire testimony and the exhibits presented in the cause. There is considerable conflict in the testimony, but on appeal this court is required to resolve all such conflicts in favor of the judgment and to view the evidence in the light most favorable thereto. (*Donato* v. *Lopopolo*, 20 Cal.App.2d 409 [66 P.2d 1256]; *Jones* v. *Lewis*, 35

Cal.App.2d 398 [95 P.2d 698] ; *Gould* v. *Escondido Valley etc. Assn.*, 56 Cal.App.2d 681 [133 P.2d 448].)

Viewing the evidence in this light, the record contains testimony of the bad condition of various and sundry parts of the buildings at the time the lease was entered into, which explains the reason for the special provision for repairs to be made by the lessor. There is also evidence of repeated requests from the lessee for performance in this respect for several months after the commencement of the lease down to March, 1956, and perhaps later into the warm months, and also there is evidence of defendant's failure to make such repairs and of his refusal to allow plaintiffs to inspect the books covering the year preceding the commencement of the lease for verification of income and expenses.

The evidence also shows that the $5,000-deposit for lease rental security was made with defendant, and that the $3,000-deposit for use in making improvements was made at a bank in Needles. This "improvement" deposit was apparently in the name of plaintiffs and segregated from other deposits. A review of the whole record indicates that said $3,000-deposit was used from time to time for the making of improvements; that defendant was consulted each time the improvements were made, was aware of the circumstances of the deposits, and made no objection whatever either to the method of deposit or to the course and manner of expenditure. In view of the fact that the lease makes no provision as to where the deposit shall be made and does not purport to set up any system of controls or manner of expenditure, it is apparent that the deposit and its expenditure was in accordance with defendant's understanding of the meaning of the contract and was in substantial compliance therewith.

The evidence shows further that the plaintiffs faithfully managed and cared for the premises, and faithfully paid the rent until it became evident that defendant was not performing his obligations and that there was a serious question as to whether he ever would or even intended to so perform. Under such circumstances the plaintiffs were entitled to hold up the payments of rent for a reasonable time, to find out just what defendant would do about his unfulfilled promises.

"But the defrauded vendee has another and alternative remedy. He may elect to rescind the contract for fraud, restore possession to the vendor, and recover the purchase money

paid less the fair rental value for the use of the property during his occupancy. This right of rescission is available to a vendee in default.'' (*Kent* v. *Clark*, 20 Cal.2d 779 [128 P.2d 868, 142 A.L.R. 576] ; *Graham* v. *Los Angeles First N. T. & S. Bank*, 3 Cal.2d 37, 45 [7] [43 P.2d 543].)

During the month following the making of the contract the plaintiffs hopefully made frequent requests for defendant to show his books and for the making of repairs, etc. We think that they did not unduly delay their action. Equity is reluctant to impose the rule of laches against an offended party where the offended party is in good faith trying to settle the troubles of the parties without resorting to court assistance.

''A delay in rescinding a contract on the ground of alleged false representations which is the result of indulgence shown to the party perpetrating the fraud is not available as a defense in an action for rescission.'' (*Graham* v. *Los Angeles First N. T. & S. Bank*, 3 Cal.2d 37, 44 [5] [43 P.2d 543].)

In *Lobdell* v. *Miller*, 114 Cal.App.2d 328, 339 [10] [250 P.2d 357], the court, quoting from *Williams* v. *Marshall*, 37 Cal.2d 445, 455 [235 P.2d 372], said:

'' 'The courts have frequently declared that there is no artificial rule as to the lapse of time which will justify the application of the doctrine of laches. Each case must be determined upon the basis of its facts, and in the absence of a palpable abuse of discretion the trial court's finding upon the issue will not be disturbed upon appeal.' ''

It must be further noted that before an offended party in a fraud case may be effectively charged with waiver or estoppel, there must be full knowledge on the part of the offended party of all the facts relating to the fraud. It is apparent in the case at bar that the facts in their total effect were coming to the plaintiffs piecemeal, and the full disclosure of defendant's false representation respecting the prior year's income did not actually arrive until the trial of this cause.

''It is the general rule, within which the case here obviously falls, that there can be no estoppel *in pais* where the party against whom the attempt is made to invoke such estoppel does not know the full truth of the facts to which his conduct, declarations or representations constituting the basis of the alleged estoppel relate.'' (*Bisconer* v. *Billing*, 71 Cal.App. 779, 783 [1] [236 P. 329] ; *Chung* v. *Johnston*, 128 Cal.App.2d 157, 163 [3] [274 P.2d 922].)

■ The defendant claims that plaintiffs made an election of remedies and that they cannot now, by this action, proceed in rescission. Action 85923 was commenced July 5, 1956, and was based on some of the same allegations of fraud and breach contained in the case at bar. It is entirely possible that plaintiffs were confused as to their remedy, the pleading was not satisfactory to the court nor to the plaintiffs, and after some legal maneuvering plaintiffs apparently believed they were forced to abandon that case and file over. They refiled just a few days after the dismissal. There was thus no decision on the merits, and we are unable to discern that defendant was in any way prejudiced or harmed thereby except, of course, that his case finally did get to the court on its real merits.

" 'When a case is dismissed without evidence having been offered it is error to render judgment on the merits. There is nothing before the court on which to base any findings determinative of the issues. The absence of proof on either side could not involve a judicial determination of the merits of the controversy. (*Freedman* v. *Sirota,* 109 App.Div. 874 [96 N.Y.Supp. 812].) . . . 'If the record of a judgment of dismissal fails to show that the judgment was given upon a consideration of the merits of the controversy, it is not available as an estoppel.' . . . Under well-settled principles of the doctrine of estoppel, the disadvantages caused the other party by a change of remedy must be a real injury, such as would, in the contemplation of law, amount to an estoppel, and when it is of this character the doctrine of election of remedies will be applied by the courts. (Citing cases.)" (*Campanella* v. *Campanella,* 204 Cal. 515, 520, 521 [269 P. 433].)

■ "The doctrine of election of remedies is but a specific application of the equitable doctrine of estoppel, and it has been frequently held that a change in remedies does not bring about an election of remedies unless the change involves a prejudice to the opposing party." (*Commercial Centre R. Co.* v. *Superior Court,* 7 Cal.2d 121, 129 [5] [59 P.2d 978, 107 A.L.R. 714].)

■ The defendant complains of the method used in calculating judgment. It would appear that the trial court used the "out-of-pocket" rule as approved in many cases in California. Many states have used the "benefit-of-the-bargain" rule, and this latter rule was sometimes used in California, but since 1935 the "out-of-pocket" rule appears to

have been followed with fair consistency. (*Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 760 [192 P.2d 935]; *Bank of America* v. *Greenbach*, 98 Cal.App.2d 220, 240 [219 P.2d 814].)

"In the rescission action a plaintiff is entitled to recover the consideration he gave on restoration or offer of restoration of that which he received. He is also entitled to recover compensation for whatever consequential damages he may have suffered by reason of having entered into the contract. In the latter case, a plaintiff is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with additional damage arising from the particular transaction." (*Lobdell* v. *Miller*, *supra*, p. 343 [17] [18].)

"As long as there is available a satisfactory method for obtaining a reasonably proximate estimation of the damages, the defendant whose wrongful act gave rise to the injury will not be heard to complain that the amount thereof cannot be determined with mathematical precision." (*Noble* v. *Tweedy*, 90 Cal.App.2d 738, 746 [203 P.2d 778].)

From an examination of the entire cause it appears that the court properly took into account all those factors that could benefit defendant in endeavoring to accomplish justice between the parties, stayed satisfactorily within the rules of equity, and that the judgment is fair and just.

The judgment is affirmed.

Griffin, P. J., and Mussell, J., concurred.